### BOARDMAN & CO. et al. v. CLARK et al.

No. 24412.   Nov. 14, 1933.

Owen & Lindsey, for petitioners.

Birge & Schwoerke, J. Berry King, Atty. Gen., and Robt. D. Crowe, Asst. Atty. Gen., for respondents.

BAYLESS, J.   Homer Clark, hereinafter called claimant, while employed by Boardman & Company, hereinafter called petitioner, whose insurance was carried by United States Fidelity & Guaranty Company, received an accidental personal injury February 1, 1929, arising out of and in the course of the employment, resulting from a guy wire which he was handling coming in contact with another wire carrying 66,000 volts of electricity.

The petitioner immediately gave notice to the State Industrial Commission of the accident and of the fact that it was paying compensation and furnishing medical attention. The petitioner continued to pay compensation to August 1, 1930, at which time it contended that temporary total disability had terminated.

On August 15, 1930, claimant filed a motion for a hearing to determine the extent of disability resulting from the injury, which disability was described by him as "a burn to his right leg, knee and side." The petitioner thereupon filed a motion for a hearing, alleging that disabliity from the injury had ceased and that the claimant

had refused to work, although he was able to work and work had been tendered to him.

A hearing was held January 16, 1931, at which time the claimant testified to the leg injury, and to other injuries in addition, and was permitted to amend his claim to cover loss of vision, nervousness, and trouble with his head and heart. He testified to such facts as he was competent to testify regarding these troubles, and, in every instance, when submitting himself to physicians for examinations, mentioned his eyes and his nervousness, headaches, and palpitation of the heart as some of his complaints. The examining physicians, who testified at this hearing, found ample physical evidence of the injury to the leg, but could find no objective symptoms of injuries to the eyes or nervous or mental systems, nor could they discover anything wrong with his heart. In their opinion the disability resulting from the injury was limited to the burned leg.

On February 5, 1931, the Commission made an award finding: (1) The accidental personal injury on February 1, 1929, resulting in severe burns on the thigh, knee, and leg; (2) that claimant was temporarily totally disabled from that date to August 1, 1930, at which time the healing period had terminated; (3) that in addition to temporary total disability as aforesaid, claimant had suffered the permanent partial loss of use of his right leg to the extent of 40 per cent., and awarded him compensation for 70 weeks for this loss.

On July 14, 1931, claimant filed a motion to reopen the case and award further compensation; and on January 7, 1932, claimant filed a motion to reopen the case on a ground of change of condition. An order relating to and evidencing a hearing held on July 12, 1932, appears in the record, but any discussion of these motions and this order is postponed until a later point in this opinion.

Thereafter, and on July 26, 1932, claimant filed a "motion to reopen case on change of condition." The allegations of this motion were that since the "former award in this case" he has suffered a change of condition in the nature of a shock to his nervous system, eyes, and brain, which now renders him permanently and totally disabled. From the allegations of this motion it is not clear whether the claimant considered the order of July 12, 1932, or the order of February 5, 1931, as the "former award in this case," by which he desires to establish his basis for comparison. However, a consideration of the evidence introduced in this case leads us to believe that he was basing his claim for a change of condition upon the condition found to exist by the award of February 5, 1931.

Several hearings were had on this motion, and in addition to claimant's testimony and that of another lay witness as to his physical appearance, conduct, and acts, at least five physicians testified as to his condition and their opinion of its cause. All of these physicians agreed in one respect: That any injuries resulting from an electric shock would leave definite objective symptoms in the nature of the destruction or degeneration of the tissues of the brain and nerve centers and that these symptoms would be observable. One of the physicians who testified at this hearing had also examined the claimant and testified at the hearing of January 16, 1931, from which the award of February 5, 1931, resulted, and according to his testimony at both hearings he was unable to find any objective symptoms. Two other physicians were unable to find any such symptoms now. These three physicians agreed that claimant was not, at the time of these hearings, suffering from any disability as a result of said accidental injury, other than to his leg, for which he had already been compensated. Two other of the physicians found symptoms to justify and sustain the claimant's complaints, and were of the opinion that he was, at the time of these hearings, suffering from a nervous or mental disability, although not a physical disability. They were further of the opinion that the nervous or mental disability was such as to prevent him from laboring at this time, although he probably was physically able so to do. They were also of the opinion that such mental or nervous symptoms had been present at all times since the injury, and that the objective symptoms found by them had been present also at all such times and could have been discovered within a very short time after the date of the injury. They were of the opinion that these symptoms and his condition grew worse as time passed. In this respect they justified the claim which the claimant had made from the very beginning that he was suffering from these disabilities.

The change in condition of which the claimant now complains is not established as a development since the former award, of February 5, 1931, for the very physical and mental evidences spoken of now were alleged and testified to in detail by him at the first hearing which preceded this award.

The physicians who now say that objective symptoms bear out his claim do not say that the symptoms are of recent origin or that they have arisen since February 5, 1931, but, on the contrary, say that they have existed at all times since immediately after the injury. This evidence does not fix with any certainty the date of the change in physical condition for the worse, resulting in disability to labor, or the date on which its effect upon wage-earning capacity became a fact.

The record before us is not in all respects perfectly clear regarding the actions and orders of the State Industrial Commission. The claimant from the very first asserted that he had sustained and was suffering from a disability caused by his eyes, head, nerves, and heart. The award of the Commission of February 5, 1931, does not award for this disability. It does not in so many words deny it, nor does it continue the matter with respect to the same or suspend its judgment thereon. We have held that where an issue of disability is presented to the Commission by the pleadings and evidence, but no definite finding or order thereon is made, presumably it is not determined, and the Commission can open the matter at a later date and act thereupon without a showing of a change of condition. U. S. F. & G. Co. v. Harrison, 125 Okla. 90, 256 P. 752. While we have held that the record before us does not show a change of condition as of a certain date, whether we can hold that this award should have been entered upon the theory that these disabilities had not been compensated for and could be considered and compensated for now without a change of condition presents the remaining question in this matter.

The claimant's testimony shows that he has been unable to work since the date of the injury and has done no work since then except on two occasions of about a week and one-half each, because of the disabling effects of the injury. The physicians who examined the claimant and testified at the time of the first hearing gave no medical or expert testimony to support his claims, but, on the contrary, disputed them and asserted that he was able to work. The physicians who examined him at the time of the last hearing, and who testified to the existence of the symptoms and of his existing disability, gave no testimony as to when the disability arose. They said that its effects had grown progressively worse. This record obviously cannot support a finding of disability in these respects existing at all times since the time of the injury. The claimant's testimony that he has been unable to work since the injury received no support from medical sources until the latter part of 1932. It was a matter upon which expert opinion from medical men was necessary to connect it with the accident. The questions of what is the degree or amount of disability and the date it commences are always questions of fact. We believe that the language and meaning of the case of Magnolia Petroleum Co. v. Allred, 160 Okla. 126, 16 P. (2d) 78, Industrial Track Construction Co. v. Colthrop, 162 Okla. 274, 19 P. (2d) 1084, and Stanolind Pipe Line Co. v. Hudson, 163 Okla. 73, 20 P. (2d) 1037, have been misinterpreted. It is contended, based upon the authority of these cases, that permanent partial disability "always" begins when temporary total disability ceases. The use of the word "always" is incorrect. In the case of Magnolia Petroleum Co. v. Allred, supra, the facts were that permanent partial disability resulting from the injury was present at the close of the temporary total disability or healing period, and was present at all times up to the hearing of 1931 and afterwards, and the Commission so found. While permanent partial disability followed immediately upon the temporary total disability, and fell under the "other cases" clause, it did not have any effect upon his earning capacity, by which the compensation therefor is computed, until sometime in 1931, and, therefore, for such period when permanent partial disability was present, but was not reflected in his earnings, the injured employee was not entitled to compensation; but when its effect became apparent in the wage-earning capacity, compensation thereupon became payable upon the ground of a change in condition so long as such effect continued, not to exceed 300 weeks from the date of the beginning of permanent partial disability. This is perfectly clear from that opinion, and this court nowhere therein indicates that the date of the commencement of permanent partial disability is not a question of fact to be determined in each case. It is also made perfectly clear that permanent partial disability under the "other cases" clause is not immediately compensable as is a specific permanent partial disability, such as the loss of an arm, leg, eye, etc., but only when it affects the wages. At this point it might be well to note that compensation for permanent partial disability under this clause is to be computed upon the difference between "his average weekly wages (before the injury) and his wage-earning capacity thereafter in

the same employment, or otherwise, during the continuance of such partial disability." Because the average weekly wages before the injury is one test, this can be determined with accuracy. However, what may be "his wage-earning capacity thereafter" is sometimes difficult to arrive at. The claimant may have an established permanent partial disability under the "other cases" clause, as in the Allred Case, which would cause an ordinary man to say that it likely would reduce his wage-earning capacity, yet when he draws the same wage after the injury as before, he cannot receive compensation. While the Legislature used "average weekly wages" and "wage-earning capacity," apparently dissimilar terms, reflection has not suggested any way to arrive at "wage-earning capacity" other than to use the "average weekly wage" thereafter as the basis. It is always proper and necessary in applying the "other cases" clause to determine the injured employee's physical condition, the degree of his physical impairment, the probable degree of his impaired ability to earn, all for the purpose of showing that permanent partial disability resulted from the injury, but, as was said by this court in Texas Co. v. Roberts, 146 Okla. 140, 294 P. 180:

"The percentage of disability is immaterial as applied to permanent partial disability. * * * The final analysis is that, since claimant was permanently partially disabled, he was entitled to receive 66 2/3 per cent. of the difference between his prior average weekly wage ($24) and his subsequent wage-earning capacity (nil), which amount is $16. * * *"

In the case of Industrial Track Construction Co. v. Colthrop, supra, it is said:

"That period commences with the beginning of the permanent partial disability. It does not commence with the date of the award."

In that case the Commission specifically found that as a matter of fact permanent partial disability began September 26, 1926, probably at a later date than when the temporary total ceased, but that no decreased earning capacity resulted until December 17, 1931, and we clearly and definitely kept in mind and applied the rule that permanent partial disability begins when it is shown as a matter of fact to begin, but it is not compensable until it affects the wage-earning capacity. or the wages. This may not occur until after the 300 weeks have expired, in which case it cannot be compensable.

Another case applying this rule is Stano-lind Pipe Line Co. v. Hudson, supra, and the application of this rule to the findings in that case is in keeping with the explanation herein contained. In each of those cases, except the Colthrop Case, supra, it is probable that the first award covered only temporary total disability, and that permanent partial disability may have been an issue presented in those hearings, but not considered or adjudicated. While those cases were filed on the change of conditions theory, it is probable that a finding of permanent partial disability might have been made on that theory or upon the theory that it had never been adjudicated and was still before the court to be determined. However, in those cases the Commission was careful to find that the change of conditions, both physical and in wage-earning effect, had occurred since the award for temporary total disability, except in the Colthrop Case, where it was shown to have occurred at a later date, and even in view of this, the Commission was careful in that case to find that the loss of wage-earning capacity had occurred since the award at which it was found that the permanent partial disability existed.

In this case the Commission found that the change of condition for the worse, resulting in permanent partial disability, was "from and after August 1, 1930," the date of the termination of temporary total or of the close of the healing period, and that the reduced earning capacity began at the same time, both of which changes in conditions antedated the award of February 5, 1931. The change of conditions must occur since the last award. The cases holding this are too numerous to cite and have not been overruled or qualified in any respect. Therefore, the finding of the Commission in this respect is erroneous.

The Commission attempted to take care of this situation by deducting from the 300 week period the 70 weeks theretofore awarded and paid to the claimant for the 40 per cent. loss of use of the leg. In this respect it committed error upon the record presented to us. In our opinion, permanent partial disability, under the "other cases" clause, is a specific disability just as is the loss of an arm or leg or an eye, and an award for such disability in addition to an award for the loss of a specific member can be made. But before such an award can be made, the Commission must hear and determine whether or not the loss of the specific member in any wise adds to the sum total of the effect of the permanent partial disability to labor under the "other cases" clause, and if it does, reduce the award for

permanent partial disability for "other cases" accordingly.

A condition of permanent partial disability under the "other cases" clause, speaking from a physical standpoint, may or may not exist at the time an award for some specific disability is made. If it is found not to exist, then it must come into existence as a result of the injury and have its effect on the wage-earning ability after the award. That is a change of conditions. Permanent partial disability may be shown and adjudged to exist at the time of an award, but it may not be shown at that time to affect the wage-earning capacity. The matter can be reopened after the award, and, if the permanent partial disability is shown still to exist and is shown then to affect the wage-earning capacity, this is a change of condition only, but renders an award for compensation proper. Permanent partial disability and the effect on wage-earning capacity may come into being on different dates, and each is effective only from the date on which it arises; however, the effect upon the wage-earning capacity always follows permanent partial disability and never vice versa. If the issue of permanent partial disability is not adjudicated in an award, as we have heretofore said, it may later be considered and awarded for, even though it be shown to antedate the award in all respects. The whole last hearing in this case was treated as a hearing on a change of conditions, and therefore both must have their effect since the last award. They cannot both antedate the last award under the condition of this record. While the issue tendered was a change of conditions, and we have held that the evidence does not show this, we cannot say that the issue of permanent partial disability had not been adjudicated before December 29, 1932. After the award of February 5, 1931, a motion to reopen and award compensation for the eyes, nerves, head, and heart, overlooked in the award of that date, was filed July 14, 1931. Before any recorded action was had upon this motion, a motion to reopen on the ground of a change of condition in the eyes, nerves, head, and heart was filed January 7, 1932. The only record of action upon either or both of these motions is found in an order of July 12, 1933. This order cannot be treated as dealing with a motion upon a ground of a change of condition, for it recites that it is made after considering the record, and no evidence of a change of condition was introduced upon that point. It can be treated logically as going only to the first motion, that is, to award for disabilities overlooked. It is clearly a denial of that motion, based upon the record and pleadings and evidence on file before the Commission and considered at that time. Therefore, in our opinion, the question of a permanent partial disability had been adjudicated adversely to the claimant by the order of July 12, 1932, and any change of condition must be shown to have taken place since that date.

It might be said, in passing, that the order of July 12, 1932, purports to be made "without prejudice" to the claimant. Under the exercise of the continuing jurisdiction of the Commission, it may refuse to pass upon a matter in the absence of the claimant, or it may suspend the making of an adjudication upon the evidence presented to a later date, or for a further hearing, but when it adjudicates a point one way or the other upon the evidence, it cannot in any manner prevent such adjudication becoming final after the expiration of 30 days of nonaction on the part of the claimant.

Therefore, the award of the Commission is vacated, and the cause is remanded for further proceedings not inconsistent with the views herein expressed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, OSBORN, and BUSBY, JJ., concur. WELCH, J., absent.