Motte *v.* Carnegie Coal Co. et al., Appellants.

Argued April 23, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Daniel H. Gibson,* and with him *Robert A. Applegate* and *Rose & Eichenauer,* for appellants.

*Arthur L. McLaughlin, Jr.,* for appellee.

OPINION BY CUNNINGHAM, J., July 13, 1934:

An employer and its insurance carrier have appealed from a judgment entered by the court below in a compensation case. The disposition of the appeal is controlled by Ludington v. Russell Coal Company et al., 90 Pa. Superior Ct. 318, and Barlock v. Orient Coal and Coke Company et al., 114 Pa. Superior Ct. 228, 173 A. 666. Under the principles stated in those cases, the judgment here appealed from must be reversed.

The applicable legislation is Section 306, paragraphs (a) and (b), of the Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended by the Act of June 26, 1919, P. L. 642; and the following material facts are disclosed by the record.

On October 6, 1920, Lewis Motte, while employed as a loader by the Carnegie Coal Company, was accidentally injured by a fall of slate. For a time he was totally disabled and an open agreement was executed under which he was paid compensation at the rate of $12 per week from October 16, 1920, to July 20, 1921, a period of 39 5/6 weeks. He then signed a final receipt and returned to work at wages in excess of the amount he was earning when injured and worked continuously from July 21, 1921, to May 7, 1925, a period of 198 weeks; the mine closed on the last mentioned date.

On December 11, 1925, (within the period of 300 weeks from the date of the accident) Motte petitioned for the reinstatement of the compensation agreement; this petition was filed prior to the amendment of April 13, 1927, P. L. 186, limiting the time within which such petitions may be filed. The ground stated was that the employe's disability had "recurred." The referee found that the petitioner was then partially disabled and that the agreement should be modified into one for partial disability as of May 7, 1925. A supplemental agreement was then executed under which pay-

ments were made for partial disability at the rate of $8.52 per week from May 7, 1925, to July 16, 1926, a period of 62 1/6th weeks—making a total period of 300 weeks from the tenth day after the accident.

The employer and its insurance carrier then filed a petition to terminate the existing agreement for partial disability, upon the ground that their liability to pay compensation to Motte terminated on July 16, 1926. He filed an answer averring that he was still partially disabled; the referee dismissed the petition to terminate; the ground assigned was that the employe was entitled, if his partial disability continued, to receive compensation until the expiration of 300 weeks from the tenth day after May 7, 1925, less the period of 39 5/6 weeks during which he had received compensation for total disability. The board affirmed the referee, but gave an additional credit for the 62 1/6th weeks during which compensation for partial disability had been paid under the second agreement.

Upon appeal by the employer and its insurance carrier to the court below, that tribunal held, in an opinion dated January 14, 1932, that the 300 weeks' period started on the tenth day after partial disability began, but remitted the record for a more specific finding with respect to that date. The board, as then constituted, made a finding that partial disability began as of July 21, 1921, the date upon which the employe returned to work; our attention has not been directed to any evidence upon the record supporting this finding. Motte excepted to it but his exception was overruled.

Upon the return of the record, the court below held that the 300 weeks' period began to run August 1, 1921, and, after deducting therefrom the 39 5/6th weeks during which compensation had been paid for total disability and the 62 1/6th weeks during which it had

been paid for partial, entered a judgment on August 17, 1933, for the remaining 198 weeks at $8.52 per week, or a total of $1,686.96, with interest, and dismissed the petition for termination. The present appeal is from that judgment. During the pendency of the appeal in the court below the employe died and his widow was substituted as a party of record.

In our opinion it is of little consequence whether Motte had a technical partial disability during the 198 weeks between July 21, 1921, (the date he returned to work) and May 7, 1925, (when the mine closed), or whether this disability should, for compensation purposes, be considered as arising on the latter date—as agreed upon by all the parties in interest.

The outstanding fact is that any possible disability he may have had during that period was not reflected to even the slightest extent in his earning power, and he never made any claim for compensation as to those weeks, but, in fact, contended that his partial disability did not begin until May 7, 1925. Moreover, his final receipt, executed July 26, 1921, was prima facie evidence of the termination of his employer's liability.

It is quite true, under all the authorities, that the basis of an award for partial disability is difference in earning power. The fact that an employe has received higher wages after, than before, an injury furnishes some ground for the conclusion that there has been no diminution in his earning power, but such evidence is by no means conclusive. The question here, however, is not whether there was any basis for an award for partial disability; defendants conceded there was, as of May 7, 1925, and executed an agreement to pay it; the controlling question is the length of time during which they were liable to pay for partial disability.

We here have, in the language of paragraph (b),

a case in which "total disability [was] followed by partial disability." When, under the facts here present, did the prescribed period of 300 weeks begin to run? For the reasons stated at length in the Barlock case, we hold that it began on the tenth day after the accident and ran concurrently with the period of 39 5/6th weeks during which compensation was paid for total disability, and, under the facts in this case, also ran concurrently with the period of 198 weeks during which the employe worked, leaving 62 1/6th weeks for which defendants were liable for partial disability. As stated, that liability has been discharged. During the full period of 300 weeks following his injury the employe received either the compensation specified in his respective agreements or was able to, and, in fact, did earn wages in excess of those he was earning when injured. In our opinion, defendants' petition for termination of the then existing agreement should have been granted.

Judgment reversed and here entered for defendants.