Barlock *v.* Orient Coal & Coke Company et al., Appellants.

Argued April 23, 1934.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Samuel G. Wagner,* and with him *Leo A. Nunnink* of *Meyer & Nunnink,* for appellant, cited: Bausch v. Fidler, 277 Pa. 573; Olinsky v. Lehigh Valley Coal Co., 93 Pa. Superior Ct. 221; Rocco v. Pennsylvania Coal Co., 93 Pa. Superior Ct. 224; Helitsky v. Glen Alden Coal Co., 93 Pa. Superior Ct. 225.

*Nicholas Unkovic,* for appellee, cited: Ludington v. Russell Coal Co., etc., 90 Pa. Superior Ct. 318; Woodward v. Pittsburgh E. & C. Co. et al., 293 Pa. 338.

Opinion by Cunningham, J., July 13, 1934:

The question involved upon this appeal is one of

law and requires a construction of Section 306 (b) of the Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended by the Act of June 26, 1919, P. L. 642, and of Section 306 (c) of that act, as amended by the Act of 1919, and as further amended by the Acts of May 20, 1921, P. L. 966, and March 29, 1923, P. L. 48.

It may be thus stated in general terms: When an injured employe is entitled to compensation under paragraph (c) for the permanent loss of the use of a member and also to compensation under paragraph (b) for disability, partial in character and separate and distinct from that caused by the loss of the use of the member, does the period of ''not beyond three hundred weeks'' prescribed in paragraph (b) begin to run on the tenth (now seventh) day after the accident, or not until the expiration of the definite period specified in paragraph (c)?

No facts are in dispute. Jerry Barlock, the claimant, sustained an accidental injury in the course of his employment as a miner with the Orient Coal and Coke Company on August 3, 1927. The injury, in the language of the referee, was ''caused by a fall of slate, fracturing the tibia and fibula and small bones in the right foot, as well as the left femur, and as a result of this accident and injury the claimant was immediately totally disabled.''

An open agreement for compensation, at the rate of $12 per week, was executed and claimant was paid for total disability from the tenth day after the accident, August 13, 1927, to October 27, 1932, a period of 272 weeks at $12 per week, or a total of $3,264. Shortly after the agreement became operative it developed that claimant had suffered the permanent loss of the use of his left leg and therefore was entitled to receive compensation under paragraph (c) at the rate of $12 per week for a period of 215 weeks. His employer did

not discontinue payments at the rate of $12 per week at the end of 215 weeks (at which time they aggregated $2,580) but continued them for 57 additional weeks.

In the meantime, namely on September 10, 1932, the employer filed its petition for a modification of the agreement into one for partial disability. In disposing of this petition the referee found that, in addition to the loss of the use of his left leg, claimant had suffered "sufficient pathology in his right leg from the knee down due to his accident and injury to constitute a disability of twenty-five per cent," and, in effect, that this incapacity extended beyond the definite period under paragraph (c) and would continue for at least 300 weeks. He further found that claimant's injuries were confined to his left leg and right foot; that the injury to the left leg resulted in "a specific loss, as provided for in Section 306 (c)"; and that "the disability he now [May 12, 1933] suffers in his right leg would be so reflected in his earning power as to cause a 25% loss in earnings, or $8.69 per week"— his wages at the time of the accident having been $34.76 per week.

As one of his conclusions of law, the referee found compensation for claimant "should be provided for the loss of the leg under Section 306 (c), and *at the expiration of said period* claimant would be entitled to be compensated for his partial disability under Section 306 (b)."

Upon these findings the referee made an award under date of May 12, 1933, reading as follows:

"Compensation is awarded to claimant and against the defendant at the rate of $12 per week, beginning August 13, 1927, and to continue for a period of 215 weeks for the loss of claimant's left leg as provided in Section 306 (c), and at the expiration of this foregoing period compensation is awarded to claimant at the rate of 60% of $8.69 or $5.214 per week and to continue at

said rate for partial disability as provided in Section 306 (b) of the Workmen's Compensation Act of Pennsylvania, defendant, however, to take credit in this award for the number of weeks they have already paid claimant under the agreement.''

This award was affirmed by the board and not appealed from by the employer. On November 17, 1933, counsel for claimant entered judgment thereon for $1,267, calculated as follows: To the period of 215 weeks under paragraph (c) was added a period of 300 weeks under paragraph (b) making a total of 515 weeks. From this total was subtracted the period of 272 weeks during which the employer had paid compensation, at the rate of $12 per week, leaving a remainder of 243 weeks for which period compensation was claimed at the rate of $5.214, or a total of $1,267.

The employer then took a rule to strike off the judgment. Its contention was that the full extent of its liability was for 215 weeks, at $12 per week, under paragraph (c) for the loss of the left leg, or a total of $2,580 under this paragraph, and then for partial disability under paragraph (b) for an additional period of 85 weeks, at $5.214 per week, or a total of $443.19, thereby making its total liability $3,023.19; but, as it had already paid claimant 272 weeks, at $12 per week, or $3,264, he had been overpaid $240.81.

In disposing of this rule the court below, in an opinion by DITHRICH, J., affirmed the principles upon which the compensation authorities acted, but pointed out that in their application to the facts (particularly that the employer had paid at the rate of $12 per week for 272 instead of 215 weeks) the referee and board had erred in authorizing the employer to take credit for ''the number of weeks'' already paid under the agreement instead of for ''the sums already paid.''

Applying the decision, the calculation would be 215 weeks at $12 per week, or $2,580, plus 300 weeks at

$5.214, or $1,564.20, making a total of $4,144.20, of which the employer had already paid $3,264, leaving a balance due claimant of $880.20.

An order was accordingly made, under date of January 31, 1934, making the rule absolute unless claimant remitted all of the judgment in excess of the sum of $880.20; a remittitur was duly filed.

As this case was presented to the court below by agreement of the parties, we here have an employe receiving injuries to each leg in the same accident, with total disability resulting at first. When it developed that the injury to the left leg amounted to the permanent loss of its use, although it was not removed, the employe admittedly became entitled to an award for 215 weeks under paragraph (c).

As we understand the record, it is conceded by appellants that at the expiration of the fixed period under paragraph (c) claimant, by reason of the injury to his right leg, had a partial disability, separate, apart, and distinct from that incident to the permanent loss of the use of his left leg, and that this partial disability would continue for an additional period of at least 300 weeks.

It is also conceded that, under the principles announced in Lente v. Luci, 275 Pa. 217, 220, 119 A. 132, this partial disability was compensable under paragraph (b) for 85 additional weeks—the only difference being that the language in the case cited refers to injuries to other parts of the body resulting directly from the permanent injury while here they were not produced by, or directly connected with, the permanent injury, but were received in the same accident.

This case therefore comes down, under its admitted facts, to this question of law: Whether the period of 300 weeks for partial disability under paragraph (b) began to run upon the tenth day after the accident and ran concurrently with the fixed period of 215

weeks under paragraph (c); or whether it began after the expiration of the definite period in paragraph (c) and was consecutive thereto; if the periods were concurrent, claimant has been overpaid by the amount of $240.81 and the action of the court below should be reversed and the judgment stricken off; but if they were consecutive, this appeal should be dismissed and judgment, as modified, affirmed.

Appellants cite Ludington v. Russell Coal Company et al., 90 Pa. Superior Ct. 318, decided March 3, 1927, as supporting their contention. The controlling facts in that case were that the employe was injured February 21, 1918, and was paid for total disability for a period of 32 weeks; he then lost his right eye as a result of the accident and was paid, under paragraph (c), for the specified period of 125 weeks. At the end of this total period of 157 weeks he was suffering injuries to other parts of his body, separate and distinct from the loss of the eye, causing partial disability compensable under paragraph (b) and was paid thereunder for an additional period of 10 weeks; his earning power then became greater than it had been at the time of the accident and remained so for 184 additional weeks, aggregating a period of 351 weeks from the date of the accident.

Under these facts we held, inter alia, that the period of 300 weeks for partial disability began to run on the fourteenth day after the accident, March 8, 1918, and expired December 6, 1923,—at which time the employe's earning power was greater than at the date of his injury. The amendments of 1919 were not in effect at the date of the accident in that case, and, as noted by the court below in its opinion, we said (page 325) we expressed no opinion at that time with respect to the possible effect of those amendments upon cases in which the accident occurred after their effective date.

We think it clear that the primary legislative intent disclosed in Section 306 was that when the result of a compensable accident is neither death nor any of the "permanent injuries" specified in paragraph (c), but the infliction of injuries causing disability, the injured employe is to be paid promptly compensation commensurate with the extent of his disability. If it be total, during its continuance, but not exceeding five hundred weeks from the specified day (originally the fourteenth and now seventh) after the accident; if partial, likewise during its continuance, but not exceeding three hundred weeks from the time of the accident. The legislature realized that total disability would frequently shade off into partial and that partial might become total; hence the necessity for some flexible provision to meet such contingencies as they arise.

Accordingly, it was provided in paragraph (a) that when the total disability therein provided for followed partial, the maximum period of payment for the total disability should not be five hundred weeks from the date it began but should be "reduced by the number of weeks during which compensation was paid for such partial disability," i. e. that the total period may not exceed five hundred weeks from the date of the accident.

Paragraph (b) in the original act provided compensation for "disability partial in character (except the particular cases mentioned in clause [c])," and that "this compensation shall be paid during the period of such partial disability; not, however, beyond three hundred weeks after the fourteenth day of such *total* disability." This provision, standing alone, would be rather confusing as the paragraph contemplates primarily an accident which causes solely a partial disability, but the latter part of the sentence fixes as a starting point for the maximum period "the four-

teenth day of such total disability," thereby assuming the existence of a total disability, such as is provided for in paragraph (a).

But the provision did not stand alone; it was further provided in the original paragraph (b) that if "total disability be followed by partial disability, the period of three hundred weeks mentioned in this clause shall be reduced by the number of weeks during which compensation was paid for such total disability."

This provision is retained in the amendment of 1919 and has the effect of making the maximum period within which compensation may be awarded for partial disability three hundred weeks from the time of injury.

The amended portion of paragraph (b) reads: "This compensation [for partial disability] shall be paid during the period of such partial disability; not, however, beyond three hundred weeks after the tenth day of such *partial* disability."

In our opinion, the amendment merely clarifies the paragraph and brings it into harmony with the operation of paragraph (a).

It is clear that where there is an increase from partial to total disability or a decrease from total to partial the respective terms under paragraphs (a) and (b) run concurrently and the starting point is, in effect, the date of the accident.

We see no indication of a legislative intent that a different principle is to be applied in awarding compensation for partial disability, separate and distinct from the disability caused by the loss of a member and extending beyond the definite period fixed in paragraph (c).

The award under paragraph (c) covered all disability "without considering, but including, all incapacity to labor that may be connected therewith,

whether such incapacity be total, partial or no inca-
pacity at all." Lente v. Luci, supra.

When it became the duty of the referee to make an
award in this case under paragraph (b) for the partial
disability caused by the injury to claimant's right leg,
the situation was, in our opinion, equivalent to one in
which total disability had been followed by partial.
Under the express provisions of paragraph (b), the
award should have been for only 85 additional weeks.

Both the compensation authorities and the court be-
low rely upon Bausch v. Fidler, 277 Pa. 573, 121 A.
507, and it must be conceded that there are expres-
sions in the opinion in that case which seem to sup-
port their position. We are not convinced, however,
that the portions of the opinion now invoked and re-
lied upon were so essential to the determination of the
only issue actually involved under that appeal that
they are binding upon us under the facts here present.

In that case the point, whether the compensation
periods therein referred to should ultimately be con-
sidered as running concurrently or consecutively, does
not seem to have been raised, argued or deliberately
considered. There, the claimant fell while painting a
roof, breaking his left arm and right leg and injuring
his right wrist. At first the extent of his injuries was
not known but those inflicted upon his left arm and
right leg developed into the permanent loss of the use
of these members. The board and court below affirmed
the referee in awarding compensation under para-
graph (c) for a total of 430 weeks—215 weeks for each
member— and, in addition thereto, awarding compen-
sation for disability to the right wrist, computed at
175 weeks for total disability under paragraph (a),
and 125 weeks for partial disability under paragraph
(b), or a total of 300 weeks. The Supreme Court af-
firmed the award for 430 weeks under paragraph (c)
for the permanent loss of the use of two members, but

set aside the award under paragraphs (a) and (b) for the injury to the right wrist. This disposed of the actual issue in the case. It was then stated that claimant might be entitled to some compensation for disability due to a stiff right wrist *if* such disability extended beyond the aggregate of the periods specified for the permanent loss of the use of the left arm and right leg and if it was separate and distinct from the disability incident to the loss of the members, but the compensation allowed for these permanent injuries under paragraph (c) was all the law permitted claimant to receive during the aggregate of the periods.

With respect to these questions, the writer of the opinion said: "It will not be necessary for the board to take up the question of partial disability at this time. Its consideration may be postponed until the time approaches when it would ordinarily go into effect."

We do not read the opinion as authority for the proposition that, if the disability from the right wrist extended beyond the 430 weeks, a referee could tack on an additional maximum period of 300 weeks, thereby compelling the employer to pay compensation for 730 weeks—a longer time than he would have been obliged to compensate a totally disabled employe.

Yet that is the effect in the case now at bar of the application by the referee and court below of their construction of the opinion in the Bausch case—payment of compensation for a total period of 515 weeks.

Neither the express provision of paragraph (b) for reduction of the 300 weeks' period, when partial follows total disability, nor the fact that the aggregate of the periods under paragraph (c) exceeded, in the Bausch case, the maximum period for partial disability, seems to have been called to the attention of, or considered by, the Supreme Court.

The construction adopted below obviously gives this

claimant an unfair and unreasonable advantage over an employe whose injuries may have rendered him absolutely helpless and bedridden for 215 weeks and then left him with a partial disability.

Clearly, the latter, under paragraph (b), would be entitled to compensation for such partial disability for only 85 additional weeks. It is inconceivable that the legislature ever intended such discrimination.

We are here considering a case in which the claimant suffered the permanent loss of the use of but one member and has a partial disability, attributable to an injury to another member, which extended beyond the 215 weeks definitely fixed in paragraph (c).

Upon these facts, we conclude that claimant is entitled to compensation for that partial disability during a period of not more than 85 additional weeks.

We need not review the other decisions of this court cited in the briefs; it is sufficient to say that none of them is in conflict with the conclusion here reached.

The total compensation to which claimant is entitled under this opinion is $3,023.19, but, as stated, he has already been paid $3,264. We accordingly sustain the single assignment of error and enter the following order.

The action of the court below, under date of January 31, 1934, is reversed and the record is remitted with instructions to reinstate the rule to strike off the judgment and make it absolute.