## Tinsman *v.* Jones & Laughlin Steel Corporation, Appellant.

518

Argued April 26, 1935.

Before
KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD,
PARKER, JAMES and RHODES, JJ.

*William A. Challener, Jr.,* with him *Frank McC. Painter* and *William A. Challener,* for appellant.

*Fred J. Jordan,* with him *Murray J. Jordan* and *Samuel A. Weiss,* for appellee.

OPINION BY KELLER, P. J., July 18, 1935:
On April 12, 1929, Maynard Tinsman, the claimant,

was injured in the course of his employment with the defendant, Jones & Laughlin Steel Corporation. His right thumb was caught between a crane cable and a piece of timber and badly crushed, requiring the amputation of the first phalanx. A compensation agreement was entered into with his employer, and approved by the Workmen's Compensation Board, which called for the payment of maximum compensation for 30 weeks, ending November 15, 1929, being the compensation allowable under section 306 (c) for the loss of half a thumb.

Subsequently an infection developed in the hand and forearm, as a result of the accident, requiring the amputation on February 14, 1931 of the rest of the thumb, and on March 6, 1931 a supplemental agreement, duly approved by the Board, was entered into with his employer providing for 30 additional weeks' compensation, beginning February 14, 1931, or 60 weeks in all, the compensation for the loss of a thumb under section 306 (c). Payments ceased on September 11, 1931. No final receipt was signed by the claimant.

On January 6, 1932, less than four months after the last payment of compensation, the claimant filed a petition to review the supplemental agreement, under section 413 of the Act as amended in 1919, P. L. 642, alleging that the said agreement was based on a mistake, viz., that he had suffered a disability to his hand other than the loss of the thumb for which he had been compensated. The defendant filed an answer denying that claimant had suffered any further disability beyond the loss of his thumb; and also pleaded that the period within which a review must be asked for had expired.

The hearing on the petition was had before a referee who found that the claimant had sustained a twenty-five per cent loss of function in the hand and forearm, irrespective of the thumb, due to interference with

flexion in the four remaining fingers, loss of musculature, the presence of adhesions and general weakened condition of hand and forearm; but, as he was not able from the evidence in the record to determine the pecuniary loss sustained, instead of taking more testimony to fix this loss, he made a declaration of nominal liability against the defendant.

Both parties appealed to the Board, which reversed the referee, holding inter alia (1) "that the supplemental agreement is subject to review under the first paragraph of section 413, (Act of April 13, 1927, P. L. 186), notwithstanding any period of limitation contained in the second paragraph, because of a disability arising out of this accident that was not incorporated in the agreement; (2) that there is no provision in the Workmen's Compensation Act authorizing a declaration of nominal liability;" and sent the case back to the referee for a rehearing.

Following a rehearing the referee found that the claimant had suffered a permanent partial disability from the accident, in addition to the loss of his thumb, equivalent to thirty per cent of his former wages,— $30.84 per week—or $9.25 per week, sixty-five per cent of which equals $6.01, due to weakened condition of his wrist and forearm, limitation of motion in flexion, loss of muscle substance and stiffening due to the infection and operation scars. He also found "24th. We find further that the supplemental agreement executed in this case was an error of fact and law because it did not contemplate and embrace the disability arising out of the accident which we have found to exist in claimant's right hand and arm, in addition to the loss of the member. 25th. We are unable to find, from the testimony in this case, that the claimant's disability resulting from the accident complained of, increased after the execution of the supplemental agreement which provided for thirty additional weeks, making in

all sixty weeks, or for the permanent loss, by amputation, of claimant's thumb. On the contrary, it is our opinion that the claimant's condition has somewhat improved over the condition which existed at the time the supplemental agreement was executed March 6, 1931." He concluded, however, that under our decision in Zupicick v. P. & R. C. & I. Co., 108 Pa. Superior Ct. 165, 164 A. 731, the supplemental agreement of March 6, 1931, was not subject to review under the first paragraph of section 413, and could not be modified under the second paragraph of said section, because there was no evidence that the disability had increased or recurred since the execution of said supplemental agreement.

Both parties again appealed to the Board, which again reversed the referee. The Board set aside the referee's 24th finding of fact, substituting in place thereof the following: "No mistake of law or of fact appears in the supplemental agreement, nor was it procured by the fraud, coercion, or other improper conduct of anyone. The claimant had in fact sustained the anatomical loss of the right thumb, and he has been fully compensated for that loss. Other disability to the hand, resulting in partial disability, existed at that time, but neither the claimant or his employer saw fit to make it the subject of a compensation agreement. This partial disability is not the result of any subsequent development arising from the amputation of the thumb, but was a fixed, permanent disability when the agreement was made." The Board, however, concluded that it had the right to treat the petition for review as if it were a claim petition filed under section 315 for a distinct disability not covered by the original and supplemental agreements, since it was filed within a year of the last payment of compensation under the supplemental agreement, and awarded claimant compensation for partial disability at the rate of $6.01 per

week, for 300 weeks, less the 60 weeks for which claimant had received compensation under said agreements, that is, for 240 weeks at $6.01 a week. On appeal by the defendant to the court of common pleas the court sustained the Board and entered judgment accordingly. The defendant has appealed to this court.

We are of opinion that the judgment must be reversed; that section 315 of the Workmen's Compensation Act is not applicable to the facts in this record, and that the petition for review must stand or fall under section 413. Section 315[1] allows two methods of procedure to fix the compensation payable under the Act to an injured employee or the dependents of a deceased one: (1) by agreement between the parties, which must be approved by the Board (secs. 317, 411)[2]; (2) by petition for compensation, followed by hearing before referee or board, and award. Both are recognized as of equal authority and validity. Mistakes of law or of fact as respects *agreements* can be corrected by the Board on petition for review filed under the first paragraph of section 413 (as amended in 1919, P. L. 642, p. 660). Mistakes of law or of fact as respects *awards* must be corrected by *appeal,* (Ernst v. Sassaman, 117 Pa. Superior Ct. 353, 178 A.

[1]"Section 315. In cases of personal injury all claims for compensation shall be forever barred, unless, within one year after the accident, the parties shall have agreed upon the compensation payable under this article; or unless, within one year after the accident, one of the parties shall have filed a petition as provided in article four hereof. In cases of death all claims for compensation shall be forever barred, unless, within one year after the death, the parties shall have agreed upon the compensation under this article; or unless, within one year after the death, one of the parties shall have filed a petition as provided in article four hereof. Where, however, payments of compensation have been made in any case, said limitations shall not take effect until the expiration of one year from the time of the making of the last payment."

[2]Section 411, is superseded by section 409 of amendatory Act of June 26, 1919, P. L. 642, p. 660.

317), or by petition for rehearing (sec. 426 as amended by Act of 1919, P. L. 642, p. 665). The act does not contemplate two separate proceedings for compensation growing out of one accident, even though two distinct injuries may result from the accident. It intends that all injuries to an employee resulting from an accident shall be compensated for in one proceeding, either by agreement or by award, not by a separate proceeding for every distinct injury. Where section 315 refers to "payments of compensation" as extending the time within which the limitations provided for in the act shall take effect, it means payments by way of wages, benefits, relief or other voluntary or informal compensation, apart from the Act, (Somerton v. Bell Telephone Co., 111 Pa. Superior Ct. 264, 169 A. 579; Hunter v. Mailey, 91 Pa. Superior Ct. 350; McGuirk v. Sun Shipbuilding Co., 80 Pa. Superior Ct. 457), or payments made under an agreement not approved by the Board, or under a premature or invalid agreement (see section 410 of the original Workmen's Compensation Act, p. 751); not instalments of workmen's compensation paid under an agreement made between the employer and employee pursuant to the provisions of the Act and duly approved by the Board. There is nothing in the case of Chase v. Emery Mfg. Co., 271 Pa. 265, 113 A. 840, contrary to this construction.

This does not result, however, in a conclusive ruling that the claimant is not entitled to compensation. In the peculiar circumstances of this case we feel that it must go back to the Board for further consideration.

While it is true that the Board set aside the referee's 24th finding of fact, that the supplemental agreement of March 6, 1931, was executed under an error of fact and law, "because it did not contemplate and embrace the disability arising out of the accident, which we have found to exist in claimant's right hand and arm, in addition to the loss of the member," the substituted

24th finding of the Board, on its face, recognized, in effect, that such a mistake had occurred. For, after referring to the fact that the claimant had sustained the anatomical loss of his right thumb, for which he had been fully compensated under the Act by the original agreement and the supplemental agreement of March 6, 1931, the Board expressly found, "other disability to the hand, resulting in partial disability, existed at that time [March 6, 1931] but neither the claimant or his employer saw fit to make it the subject of a compensation agreement. This partial disability ...... was a fixed, permanent disability when the agreement was made." It was the duty of the employer to include in the supplemental agreement of March 6, 1931, all permanent disability from which the employee was suffering at the time, of which it had knowledge. Can anyone suppose that if the Board, on receipt of a copy of this supplemental agreement, had been informed that the accident had resulted in additional fixed, permanent disability to the hand and forearm, affecting claimant's earning power, not provided for in the agreement, it would have pronounced it valid and approved it? If knowing that the employee was suffering at the time from a fixed, permanent disability to the hand and forearm, as well as the loss of a thumb, the employer deliberately prepared a compensation agreement restricting compensation to the loss of the thumb, and making no provision for the permanent partial disability to the hand and forearm, it would be a fraud on the employee, unless the latter was fully informed of all the circumstances and signed the agreement with full knowledge that he was thereby depriving himself of his legal rights. No such full and explicit knowledge on the claimant's part has been shown in this case. In the light of defendant's formal answer, filed January 15, 1932, denying that the claimant had suffered *any* disability from the accident beyond the

loss of his thumb, we prefer, rather, to accept the explanation of mistake. While the evidence is conclusive that the claimant's right hand and forearm are permanently partially disabled as a result of the accident and the ensuing infection,—Dr. McGuire, a physician and surgeon of high standing, who performed both amputation operations on the thumb, admits it—it is not clear from the evidence—in fact there is no evidence to support a finding—that on March 6, 1931, when the supplemental agreement was signed, either of the parties, employee or employer, or the attending physician and surgeon, knew that the infection would leave a lasting, permanent disability to the hand and forearm; they probably expected that the infection would be relieved by the further amputation of the thumb and would clear up without any permanent disabling effects. This does not appear to be the case of parties deliberately electing to omit this additional disability from a compensation agreement, but rather its omission because of a mutual, mistaken belief that it was not permanent but temporary and would clear up within the period of compensation fixed in the agreement. There is no evidence in the record to support a finding by the Board that the claimant and employer knew on March 6, 1931, of the fixed permanent disability to the hand and forearm, and "saw fit" not to make it the subject of a compensation agreement.

Our ruling in Zupicick v. P. & R. C. & I. Co., supra, which limited a review of an agreement under the first paragraph of section 413, as amended, to *existing agreements* has been modified in Kitchen v. Miller Bros. Co., 115 Pa. Superior Ct. 141, 146, 147, 174 A. 919, so as to restrict that ruling to agreements under sections 306 (a) and 306 (b), and not make it applicable to agreements for compensation for a definite period under section 306 (c).

While, contrary to the finding of the referee, ap-

proved by the Board, the evidence does show some increase or recurrence of disability since March 6, 1931 —Dr. McGuire admitted the presence of a neuroma at the end of the thumb, "which is a little tumor on the end of a cut nerve," and said that it ought to be removed under a local anaesthetic—a modification or reinstatement of the agreement on that score under the second paragraph of section 413 as amended is not permitted under the amending act of April 13, 1927, P. L. 186, 195, which specifically provides that an agreement or award for a definite period—that is under section 306 (c)—can only be thus reviewed, modified or reinstated during the time such agreement or award has to run. We pointed out the injustice of this clause in Ernst v. Sassaman, supra, but its correction is for the legislature, not the courts.

One other error in the judgment requires notice. The Board awarded compensation for 240 weeks—being 300 weeks less 60 weeks compensated for under the original and supplemental agreements. Judgment was entered accordingly. This was error.

The original award was for one-half thumb, 30 weeks, ending November 15, 1929. Claimant was entitled .to this, irrespective of whether he was able to work during this period or not. On its termination, however, there followed a considerable period of time during which claimant was working and apparently suffering no disability beyond the loss of half the thumb, for which he had been paid. Then infection set in requiring further amputation on February 14, 1931, and the supplemental agreement of March 6, 1931, was made giving compensation for the other half thumb, 30 weeks more from February 14, 1931, ending September 11, 1931.

If, on further consideration, the Board finds the claimant entitled to compensation for permanent partial disability, by reason of a mistake in executing the

supplemental agreement aforesaid the claimant has been paid in full for disability up to September 11, 1931, and not merely for 60 weeks following the accident, and the award should be for 175 weeks, instead of 240: Barlock v. Orient C. & C. Co., 114 Pa. Superior Ct. 228, 173 A. 666, affirmed by Supreme Court, 319 Pa. 119, 178 A. 840; Motte v. Carnegie Coal Co. et al., 114 Pa. Superior Ct. 239, 173 A. 670; Ludington v. Russell Coal Co., 90 Pa. Superior Ct. 318. The circumstance that the two payments together amounted to compensation for the total loss of the thumb did not affect the fact that there was a long period of no disability between them, and that payment under the supplemental agreement was in full of compensation up to September 11, 1931, 125 weeks after the first payment of compensation was due.

The judgment is reversed and the lower court is directed to remit the record to the Board for further proceedings not inconsistent with this opinion.