PARAMOUNT PICTURES, INC., *v.* SNOW.

MONTICELLO COTTON MILLS COMPANY *v.* LARKIN.

4-8571, 4-8572 212 S. W. 2d 346

Opinion delivered June 21, 1948.

714

4-8571

*Bridges, Bridges, Young & Gregory,* for appellant.

*Wootton, Land & Matthews* and *James L. Byrd,* for appellee.

4-8572

*Bridges, Bridges, Young & Gregory,* for appellant.

*C. T. Sims,* for appellee.

GRIFFIN SMITH, Chief Justice. As insurance carrier under separate contracts, Hartford Accident & Indemnity Company has joined with Paramount Pictures, Inc., and Monticello Cotton Mills Co., in presenting identical questions of law arising under Workmen's Compensation Act of 1939, as amended.

Paramount's employe was Guy Snow, who was the Corporation's manager at Newport when injured September 2, 1942. For five weeks and six days he was compensated at the maximum rate of $20 per week. He returned to work, but was transferred to Hot Springs. Between October 14, 1942, when work was resumed, and September 30, 1945, Snow's earnings were in excess of those at the time of injury. During the employment period compensation under Act 319 of 1939 was suspended. *Sallee Bros.* v. *Thompson,* 208 Ark. 727, 187 S. W. 2d 956.

When the interim employment was terminated October 1, 1945, Snow petitioned for a resumption of payments, and the Commission, after a hearing, directed that this be done, beginning April 11, 1945. The Commission found—and this appears to be undisputed—that while appellee was employed after the layoff of five weeks and six days, he did not regain the state of health formerly

enjoyed, and " . . . in fact, suffered a physical impairment to his body generally, the extent of which was not finally determined until . . . April 11, 1947." The award was on the basis of a 25% disability to the body as a whole, covered by § 13 (c-23) of the Compensation Law. Direction was that payment be made during such disability, " . . . but not to exceed in any event 444 1/7 weeks from October 1, 1945."

Larkin's award was for $10.40 per week for a disability resulting from injuries received June 18, 1942, while working for Monticello Cotton Mills Co. Compensation began June 23, 1942, and continued until July 27 of the same year. Larkin then resumed work, continuing the employment until March 6, 1943, when the same disabling cause compelled relinquishment of the position. September 15, 1943, the Commission directed a resumption of payment, and under this order the obligation for 110 5/7 weeks was discharged—that is, to March 16, 1945. Larkin then obtained employment at the Camden Naval Ordnance Plant, being so engaged until November 16, 1946, at which time unemployment occurred, and a claim for resumption of payments was asserted. On the ninth of April, 1947, the Commission found that appellee still suffered permanent partial disability entitling him to compensation of $7 per week during continuance of the impairment, subject to controlling provisions of Act 319, but " . . . not to exceed 339 2/7 weeks from November 16, 1946."

In each case appellants contend that the Commission has misconstrued the law, and that the Circuit Court of Jackson County, in Case No. 8571, and the Drew Circuit Court, in Case No. 8572, erred in not holding that in those cases where the maximum number of weeks during which compensation must be paid is 450, time begins to run from the first week, and that any interruption of payments, as in *Sallee* v. *Thompson*, must be deducted from the compensable period. For example, if a claimant is first entitled to a stipulated sum for 450 weeks and is paid for 100 weeks, then presumptively he is entitled to 350 weeks additional. But if, at the end of 100 weeks,

employment is accepted in circumstances where there has been no reduction in the worker's earning capacity by reason of the injury, and this continues for, say, 50 weeks and terminates while the original impairment persists, lapsed time has been 150 weeks; and the question is, Does Act 319 contemplate that (irrespective of interruption of what would have been compulsory payments except for private engagement) rights under the law terminate by limitation 450 weeks from first payment under the award? Is "time out" during voluntary employment subsequent to injury to be counted as though compensation had been continued by the employer or his insurance carrier?

Emphasizing the rule so well understood that its value gains nothing when repeated, appellants believe the legislative intent must be gathered from pertinent language used in the Act, with particular reference to § 13(a) and (b), and § 13 (c-23).

Section 13 (c-23), preceded by a list of specific allowances, deals with "all other cases [of permanent partial disability"], and directs payment to the injured employee upon the bases of 65% of the difference between average weekly wage and earning capacity after the impairment "in the same employment or otherwise, payable during the continuance of such partial disability, but subject to reconsideration of the degree of such impairment by the Commission on its own motion or upon application of any party in interest, *and in no case exceeding a longer period than 450 weeks, or a maximum of $7,000.*"[1]

Section 13(a)—permanent total disability—contains the limitation, " . . . but not exceeding a total of 450 weeks, and in no case shall the total compensation exceed the sum of $7,000." The restriction in § 13(b)—temporary total disability—is, " . . . but not exceeding a total of 450 weeks, and in no case shall the total compensation exceed the sum of $7,000."

In the quoted subdivisions of section thirteen the language varies,—in (a) and (b) but slightly. Pre-

[1] Italics supplied.

ceding the limitation formula in § 13(c-23) compensation is " . . . payable during the continuance of such partial disability, . . . in no case exceeding a longer period than 450 weeks." So, say appellants, "In one breath the Legislature specified *the maximum period of time* during which compensation would be payable, and in the next, *the maximum amount* which could be received, [$7,000,] was expressed."

But is it logical, from the changed phraseology alone, to assume that the General Assembly intended to differentiate between (a) permanent total disability, (b) temporary total disability, and (c) permanent partial disability, and to conclude, further, that this results from the slight alteration in word arrangement? Surely a policy so important would have received express treatment by the lawmakers. It is hard to believe that the advantage to employer or insurance carrier resulting from appellants' construction of the intent behind the three sections was conferred in an off-hand way. This view, however, is not reached without according to appellants' counsel full credit for an exceedingly adroit and ingenious argument, strongly presented.

Our Compensation Law is in many respects similar to Oklahoma's. The point at issue was discussed by the Supreme Court of that State in *Magnolia Petroleum Company* v. *Allred,* 160 Okla. 126, 16 Pac. 2d 78. The worker received an award "for a period not to exceed 300 weeks from the fourteenth day of October 1931." After receiving the compensable injury he worked "in the same employment or otherwise" for a period of four years. In holding that this time of employment was part of the 300 weeks, the Court appears to have reasoned as appellants do in the case at bar, and in this they are sustained more or less by *Industrial Truck Construction Co.* v. *Colthrop,* 162 Okla. 274, 19 Pac. 2d 1084; *Boardman & Co.* v. *Clark,* 166 Okla. 194, 26 Pac. 2d 906; *Johnson* v. *Iverson,* 175 Minn. 319, 221 N. W. 65, 222 N. W. 508; *General Chemical Co.* v. *Vail,* 34 Del. 322, 152 Atl. 425; *Mott* v. *Carnegie Coal Co.,* 114 Pa. Super. Ct. 239, 173 Atl. 670; *Barlock* v. *Orient Coal & Coke Co.,* 114 Pa.

Super. Ct. 228, 173 Atl. 666; *Raven Red Ash Coal Corp.* v. *Absher,* 153 Va. 332, 149 S. E. 541.

In the Johnson-Iverson case (Minn.) it was said that the 300 weeks' period for which compensation was allowed commenced one week after injury and it could not be extended by temporary interruptions during which no compensation was owing or awarded.

The opinion by Mr. Justice RICE in the Vail case (Del.) says that where the accident occurred April 10, 1920, the compensable period of 285 weeks terminated [headnote] "about September 26, 1925, and Industrial Accident Board could not make award for partial disability thereafter, though compensation was not paid for all of 285 weeks."

In the Mott case (Penn.) it was held that the employee's period for partial disability ran concurrently with the period during which he was paid for total disability, and with the period thereafter during which the claimant worked. The same rule was applied in the Barlock appeal, also decided by the Pennsylvania Superior Court.

The Absher case (Va.) said the Compensation Act [headnote] permitted recovery "only for period of 300 weeks from date of injury, regardless of intervening period, when employee appeared to have recovered, and during which no payment was made."

Arkansas was the forty-seventh state to provide planned compensation for injured workmen, and Mississippi the forty-eighth. Although uniform in general purpose, the various legislative Acts—sometimes repeatedly amended—employ expressions peculiarly pertinent to the subject-matter, and court constructions in each of the states are with reference to the exact language used. An examination of many cases discloses such a contrariety of judicial thought that little good could result from a review. After all, we must determine what the General Assembly of this State purposed to do, and declare the intent if it can be gathered from language.

It seems reasonably certain that by § 13(c-23) the plan was to provide a method by which a compensable claimant would receive (1) 65% of the difference between his average weekly wages and his wage-earning capacity after the injury "in the same employment or otherwise"; (2) the maximum weekly payment, by § 10, is not more than $20 nor less than $7. (3) Total compensation shall not be more than $7,000. (4) Duration of the payment period is 450 weeks; but, since there are no express words of limitation other than those pertaining to the amount of payment—that is, $20, $7, and $7,000—credit in point of time cannot be taken by the employer or carrier because of the claimant's voluntary conduct in accepting employment, and working in spite of physical impairment. Take, for example, the case of a claimant whose injury entitles him to permanent partial disability, and who, being in a high wage bracket, is awarded $20 per week for 450 weeks. The total would be $9,000; yet because of the limitation of $7,000 he will realize $2,000 less than 450 multiplied by 20.

To hold that the weekly period must be reduced to correspond with "time out" during voluntary employment would be to say, in effect, that the injury is not to be *fully* compensated and that essence of the Act is time. We do not think this was the legislative intent, hence the judgments must be affirmed.