ARKANSAS STATE HIGHWAY AND
TRANSPORTATION DEPARTMENT, Self-Insured
Employer *v.* Johnnie M. BRESHEARS, Employee

80-320                                    613 S.W. 2d 392

Supreme Court of Arkansas
Opinion delivered March 30, 1981

*Robert L. Wilson*, for petitioner.

*William C. Gilliam*, for respondent.

RICHARD B. ADKISSON, Chief Justice. Johnnie M. Breshears suffered an injury to his back while painting a ceiling for his employer, the Arkansas Highway Department. The Workers' Compensation Commission, in sustaining the administrative law judge, found temporary total disability from the date of the injury through the healing period. The Court of Appeals affirmed. *Ark. Hwy. & Transp. Dep't.* v. *Breshears*, 271 Ark. 398 (Ark. App. 1980). We granted certiorari to review the legal basis of the Court of Appeals' decision in affirming the Commission.

The Court of Appeals relies upon *Pyles* v. *Triple F Feeds of Texas*, 270 Ark. 729 (Ark. App. 1980) which incorrectly held that temporary total disability and the healing period were, in all cases, the same because, as the court stated: "While the wording of the act is not entirely clear, it seems more logical to ascribe to the Legislature an intent that an employee in Arkansas, suffering an unscheduled first injury, is to be paid compensation for *the healing period* as is done in case of a second injury or for a scheduled injury."

I

We hold that the term "disability" as defined below

controls compensation awards in all cases of temporary disability except where compensation is statutorily based upon the "healing period." The Legislature specifically defines these terms in Ark. Stat. § 81-1302 (e) and (f) (Repl. 1976):

> (e) 'Disability' means incapacity because of injury to earn, in the same or any other employment, the wages which the employee was receiving at the time of the injury.

> (f) 'Healing period' means that period for healing of the injury resulting from the accident.

The term "disability" is then used in Ark. Stat. Ann. § 81-1313 (a) (Repl. 1976) which controls this case:

> (a) Total Disability. In case of total disability there shall be paid to the injured employee during the continuance of such total disability sixty-six and two thirds per cent (66 2/3%) of his average weekly pay.

The term "healing period" is noticeably absent from this particular compensation provision although it appears in two other compensation sub-sections of § 81-1313: (c), providing for scheduled permanent injury compensation; and (f), providing for second injury compensation. *See International Paper Co.* v. *McGoogan,* 255 Ark. 1025, 504 S.W. 2d 739 (1974), a scheduled injury case.

Temporary disability is determined by the extent to which a compensable injury has affected the claimant's ability to earn a livelihood based on medical evidence, age, education, experience, and other matters reasonably expected to affect the claimant's earning power. See *Rooney & Travelers Insurance Co.* v. *Charles,* 262 Ark. 695, 560 S.W. 2d 797 (1978).

Temporary total disability is that period within the healing period in which the employee suffers a total incapacity to earn wages. Ark. Stat. Ann. §§ 81-1302 (e) and -1313 (a). Whereas temporary partial disability is that period

within the healing period in which the employee suffers only a decrease in his capacity to earn the wages he was receiving at the time of the injury. Ark. Stat. Ann. §§ 81-1302 (e) and -1313 (b).

## II

There is substantial evidence of record to support the Commission's finding that the claimant suffered temporary total disability from the date of injury through the healing period, November 9, 1978; by coincidence, the period of temporary total disability equals the healing period in this case.

Testimony at the June, 1979 hearing reflected that appellee "had tried to work but had been unable to do so; that he had an eighth grade education; suffered continually from pain in and about his neck and shoulders; [and] had an experience background consisting primarily of mechanic work, sawmills and principally general labor." Dr. Cash's reports indicated that the injury aggravated claimant's pre-existing condition of "degenerative cervical arthritis" and disabled claimant until May 3, 1978, at which time he was released for light work; lifting and overhead work were prohibited.

Although Dr. Cash released claimant for light work, there was no testimony pertaining to his ability to earn the same or any part of the wages he was receiving at the time of the injury. The Workers' Compensation Commission is in a better position to evaluate the claimant's ability to earn wages in the same or other employment. And, as in this case, once the Commission has before it firm medical evidence of physical impairment and functional limitations, it has the advantage of its own superior knowledge of industrial demands, limitations, and requirements. It can apply its knowledge and experience in weighing the medical evidence of functional limitations together with other evidence of the manner in which the functional disability will affect the ability of the injured employee to obtain or hold a job and thereby arrive at a reasonably accurate conclusion as to the extent of the disability. *Rooney.*

The Commission's findings of fact are binding upon this court where we find substantial evidence to support them. *Clark* v. *Peabody Testing Service*, 265 Ark. 489, 579 S.W. 2d 360 (1979).

Affirmed as modified.