ARKANSAS SECRETARY OF STATE and ARKANSAS INSURANCE DEPARTMENT, Public Employee Claims Division *v.* J. T. GUFFEY

86-141                                        727 S.W.2d 826

Supreme Court of Arkansas
Opinion delivered April 13, 1987

*Jerry G. James*, Public Employee Claims Division, Arkansas Insurance Department, for petitioners.

*Walter A. Murray*, and *Allen, Cabe & Lester, A Professional Association*, for amici curiae, Arkansas State Chamber of Commerce, Associated Industries of Arkansas, Inc., and Arkansas Self-Insurers Association.

*Gary Eubanks & Associates*, by: *James Gerard Schulze*, for respondent.

*Youngdahl, Youngdahl & Wright, P.A.*, by: *Randall A. Wright*, and *James A. McLarty*, for amici curiae, Arkansas State AFL-CIO and Arkansas Trial Lawyers' Association.

THOMAS S. STREETMAN, Special Justice. This is a workers' compensation case. We granted certiorari to review the legal basis of the court of appeals' decision reversing the Arkansas Workers' Compensation Commission. See, *Guffey* v. *Arkansas Secretary of State*, 18 Ark. App. 54, 710 S.W.2d 836 (1986). The issues are two-fold: (1) did the Commission err in finding that the Arkansas Workers' Compensation Law (the Act) does not authorize payment of current total disability benefits after the healing period, and (2) did the Commission err in deciding the issue of permanent disability benefits.

On July 27, 1981, respondent, Guffey, fell and fractured his right ankle while employed as a maintenance worker for petitioner, Arkansas Secretary of State. He was paid temporary total benefits from July 28, 1981, through April 25, 1983. Dr. Jerry Thomas treated respondent for his injuries. Respondent had

surgery on his foot on July 28, 1981. On April 25, 1983, Dr. Thomas stated that respondent had a fifty-five percent permanent impairment to his right foot. The Commission found that the healing period ended April 25, 1983.

Based on Dr. Thomas' April 25th rating, petitioner paid respondent fifty-five percent permanent partial impairment to the right foot as a scheduled injury under Ark. Stat. Ann. § 81-1313(c) (Repl. 1976).

Subsequently, additional surgery was performed on respondent's foot on September 20, 1984, and he sought additional temporary benefits. At a hearing before the administrative law judge on October 26, 1984, respondent claimed he was entitled to additional benefits because he had an additional period of disability from April 26, 1983 to September 20, 1984. At that hearing respondent contended that he was either permanently and totally disabléd or *currently totally disabled*. However, counsel for both parties agreed that the only question for decision at that time was whether respondent was entitled to current total disability benefits after April 25, 1983. This was the only issue on which evidence was presented at the hearing.

The administrative law judge denied current total benefits after April 25, 1983, and respondent appealed to the full Commission. The Commission affirmed the administrative law judge on the denial of current total benefits and also denied recovery for any permanent total benefits although that issue was not before the law judge.

Although the Commission noted that it had previously approved current total disability awards that extended beyond the healing period, it stated that the concept of current total benefits was creating difficult problems for the Commission. In illustrating the problems, the Commission quoted from its decision in *Leslie* v. *Sanyo Mfg. Co.*, WCC No. D007121 (1984):

> The concept or doctrine of current total disability, a term not to be found in the Arkansas Workers' Compensation Act itself, has been sanctioned several times in recent years by the Arkansas Court of Appeals. (citations omitted) . . . Indeed, it must be candidly admitted that the concept of current total disability, which is neither mentioned nor

defined in the statute and not discussed by any of the leading text writers on the subject of workers' compensation which have been reviewed, is presenting to this Commission difficult and perplexing problems in determining its applicability.

It is perhaps appropriate to observe at this point that the Commission itself for the past few years has been increasingly applying the concept of current total disability (or something akin thereto without using that particular terminology) without really defining the doctrine, without stating its specific statutory authorization, and without describing its parameters.

The Commission reviewed several cases from the court of appeals supporting the award of current total disability benefits after the healing period had ended and before determination of permanent benefits. In holding that respondent was not entitled to current total benefits, the Commission found there was no statutory basis for award of current total disability benefits that extended beyond the healing period.

Was the Commission correct in holding that the Act does not provide for payment of current total disability benefits after the healing period ends? In construing the Act, it is well settled that we must liberally interpret it, resolving all doubts in favor of the claimant. This court has consistently so interpreted the Act. *Purdy's Flower Shop* v. *Livingston*, 262 Ark. 575, 559 S.W.2d 24 (1977); *Aluminum Co. of America* v. *Henning*, 260 Ark. 699, 543 S.W.2d 480 (1976); *International Paper Co.* v. *McGoogan*, 255 Ark. 1025, 504 S.W.2d 739 (1974). However, where the Act is clear and not subject to interpretation, we must adhere to the law as enacted.

Workers' compensation laws are entitlement legislation. These laws were enacted to create rights and benefits for injured workers and their dependents. For benefits to be awarded, they must be provided for in the Act. Our Act does not mention current total disability benefits. Neither are there any cases by this court specifically authorizing payment of current total disability benefits.

There are, however, several decisions, in addition to this

case, by our court of appeals which have specifically sanctioned the payment of current total disability benefits. *Sunbeam Corporation* v. *Bates*, 271 Ark. 385, 609 S.W.2d 102 (1980); *City of Humphrey* v. *Woodward*, 4 Ark. App. 64, 628 S.W.2d 574 (1982); *Mad Butcher, Inc.* v. *Parker*, 4 Ark. App. 124, 628 S.W.2d 582 (1982); *Bemberg Iron Works* v. *Martin*, 12 Ark. App. 128, 671 S.W.2d 768 (1984); *Pitts* v. *Western Electric*, 15 Ark. App. 85, 689 S.W.2d 582 (1985); and *Electro-Air* v. *Villines*, 16 Ark. App. 102, 697 S.W.2d 932 (1985). However, counsel for respondent conceded during oral argument that he was unaware of legislation or cases from other jurisdictions which permit payment of current total disability benefits after the healing period ends. None of the text writers discuss the award of current (non permanent) total benefits beyond the healing period.

The concept of current total disability benefits seems to have been based on our decision in *McNeely* v. *Clem Mill & Gin Co.*, 241 Ark. 498, 409 S.W.2d 502 (1966) although that terminology is not expressly mentioned in that case. To the extent that *McNeely* has been interpreted as holding that temporary benefits, regardless of how they are denominated, may be paid after the end of the healing period, that interpretation is erroneous.

Our Act does not authorize award of current total or limited total disability benefits after the end of the healing period. If those benefits are to be provided, it will be necessary for the Arkansas General Assembly to determine the circumstances under which injured workers will qualify for those benefits.

The court of appeals erred in reversing the Commission's decision that it had no legal authority to award current total disability benefits after the end of the healing period.

The court of appeals also held that the Commission erred in deciding the issue of permanent disability benefits. We agree. At the hearing before the administrative law judge, the parties stipulated that the only issue was respondent's status from April 26, 1983, until August, 1984. The administrative law judge only decided that issue. The parties were not given an opportunity to develop the issue of permanent disability.

The court of appeals correctly held that the Commission

erred in deciding the permanent disability issue.

Reversed and remanded.

SPECIAL JUSTICE THOMAS BURKE joins in this opinion.

HAYS and GLAZE, JJ., not participating.

PURTLE, J., concurs.

JOHN I. PURTLE, Justice, concurring. I concur with that part of the majority opinion which holds that there is no authority for "current total disability." However, I believe the language of the majority opinion is overly broad. The majority has stated this principle in a manner which might be misinterpreted and could result in a determination that once a healing period has ended, no additional temporary compensation may be paid regardless of the consequences and nature of the compensable injury. It is my fear that this decision might be interpreted to hold that injured workers are barred from receiving successive or interrupted periods of temporary total or partial disability.

The majority states: "[t]o the extent that *McNeely* has been interpreted as holding that temporary benefits, regardless of how they are denominated, may be paid after the end of the healing period, that interpretation is erroneous." This part of the opinion is subject to the interpretation that after a temporary healing period has been interrupted, it can never be resumed. It is not necessary to extinguish currently existing rights in order to resolve the issue of "current total disability." Failure to allow a temporary total disability period to be interrupted by an attempt at part or full time work would destroy the incentive for an injured worker to temporarily re-enter the labor field.

The Workers' Compensation Act is social legislation and should be interpreted liberally in favor of the worker. In fact, since the beginning of the Act, an interruption of a period of temporary total disability, by obtaining a less strenuous job, has been held to create separate periods of disability. In the case of *Monticello Cotton Mills Company* v. *Larkin*, 213 Ark. 713, 212 S.W.2d 346 (1948), this Court dealt with this same problem. In *Larkin* the Court stated:

> Larkin's award was for $10.40 per week for disability resulting from injuries received June 18, 1942, — began

June 23, 1942, and continued until July 27 of the same year. Larkin then resumed work, continuing the employment until March 6, 1943, when the same disabling cause compelled relinquishment of the position. September 15, 1943, the Commission directed a resumption of payment, and under this order the obligation for 110 5/7 weeks was discharged — that is, to March 16, 1945. Larkin then obtained employment at the Camden Naval Ordnance Plant, being so engaged November 16, 1946, at which time unemployment occurred, and a claim for resumption of payments was asserted. On the ninth of April, 1947, the Commission found that appellee still suffered permanent, partial disability entitling him to compensation of $7.00 per week during continuance of the impairment, subject to controlling provisions of Act 319. . . .

I am aware that the Act that existed at the time *Monticello* was decided is not exactly the same as the present Act. I also realize that Arkansas was the forty-seventh state to enact Workers' Compensation laws. However, simply because we were late in adopting such legislation is no reason to continue to be behind the rest of the country. Since the inception of the Act, both this Court and the Court of Appeals have upheld the principle of "time out" during temporary work re-entries. In *Larkin* the Court stated:

To hold that the weekly period must be reduced to correspond with "time out" during voluntary employment would be to say, in effect, that the injury is not to be *fully* compensated and that essence of the Act is time. We do not think this was the legislative intent, hence the judgments must be affirmed.

The terms "temporary total" and "temporary partial disability" are not synonymous with "healing period." In *Arkansas State Highway Department v. Breshears*, 272 Ark. 244, 613 S.W.2d 392 (1981), this Court stated:

Temporary total disability is that period within the healing period in which the employee suffers a total incapacity to earn wages. . . [T]emporary partial disability is that period within the healing period in which the employee

suffers only a decrease in his capacity to earn. . . .

The plain words set forth in Ark. Stat. Ann. § 81-1302 (Repl. 1976) define "disability" as meaning an incapacity to earn because of injury. The statute further states that "healing period" means that period for healing of the injury resulting from the accident. It is clear that the Act contemplates different periods of "disability" during the "healing period."

Frequently an employee will be conditionally released from a "disability" in order to attempt to return to gainful employment. This was the case in *Breshears*. Sometimes an injured employee may be declared by the attending physician to have reached a plateau in his healing period where a release for "light duty" employment would be appropriate and beneficial in order to facilitate re-entry into the work force. Both the employer and the employee would suffer monetary hardships by the failure to encourage such "time outs." "A claimant's voluntary efforts to find employment, in spite of physical disability, should not be used to penalize him by preventing him from later receiving compensation which he would otherwise have been entitled to receive.

The "healing period" is not always readily determinable. In the exercise of a physician's sound judgment, there may be a time when he decides it would be in the best interests of all parties to release a patient for a trial period of employment, even though the patient has not reached the end of the healing period. Often this "temporary" work retards or even aggravates the recovery process. In other cases, the employee will be able to resume light duty, or even his regular duties, long before the end of the healing period. Therefore, the "temporary" disability may end before the healing process is completed.

Successive or reoccurring periods of disability do not necessarily increase the liabilities of the employer or his carrier. The Act limits the maximum payment by time and amount. If an employee were to draw 450 weeks of temporary compensation, then the employer, or its carrier, would not be liable for any additional disability compensation because the Death and Permanent Total Disability Bank Fund would be responsible for the additional payments.

A hard and fast rule that temporary benefits cannot be paid after the end of the healing process might well result in an injustice. For example, a broken mandible might result in a temporary disability period of one week but the healing period would last many weeks. Another example might be that the loss of a foot would require a relatively short time to heal but would require a much longer period of temporary disability to enable the worker to learn to walk with an artificial foot.

Failure to recognize such possibilities will most likely result in the Commission and the courts being compelled to find an "aggravation" or a "reinjury" when in reality it is the resumption of temporary disability after a trial work period. I would make it clear that a claimant's successful efforts to find employment during the healing period should *not* be used *to penalize him* by preventing him from later receiving compensation which he would otherwise have been entitled to receive.