Somerton *v.* The Bell Telephone Co. of Pa., Appellant.

Argued October 13, 1933.

Before Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

266

*Charles E. Kenworthey* and with him *Benjamin O. Frick,* for appellant.

*Todd Daniel* and with him *Henry Temin,* for appellee.

OPINION BY CUNNINGHAM, J., December 16, 1933:

For about six years prior to March 13, 1930, the claimant in this compensation case had been in the employ of the defendant company as an elevator operator. On that date, in the course of her employment, she suffered an injury to the lower part of her back by an accident; it occurred while claimant and the employment manager for defendant were descending a stairway in defendant's building at No. 1316 Arch Street, Philadelphia. She testified: "I turned to go down the steps; as I turned I don't know what happened but I felt myself slipping and got hold of the wall and clung to the wall and pulled myself back and struck my back in the middle of the third step at the corner of the step. Q. Did you fall? A. Yes, and struck my back, in drawing myself back to save myself I struck my back (indicating the lower portion of the back) on the edge of the step that had a steel tread on the corner of the step."

Although suffering severe and constant pain, claimant continued the performance of her duties during the afternoon of that day (Thursday) and returned to her work on Friday and Saturday. On Sunday morning she called her family physician, Dr. R. H. Llewellyn. It is not controverted that claimant has been totally disabled from that time down to the date of the hearing before the referee, July 21, 1932.

No compensation agreement was entered into, but, under a plan for pensions and benefits, established by the defendant, and under circumstances hereinafter related, claimant was paid her full wages, $22 per week, for thirteen weeks following her accident, and

one-half of her wages for an additional period of approximately fifty-two weeks, or until June 21, 1931. On that date she also received a lump sum payment of $250.

On January 5, 1932, more than one year after the date of the accident, but within one year after the receipt of the last payment above mentioned, claimant filed with the board a claim petition under the Workmen's Compensation Act of June 2, 1915, P. L. 736, and its amendments, claiming compensation from defendant under the provisions of that legislation.

The principal defenses interposed were: (a) That the payments made by defendant to claimant were not "payments of compensation," within the meaning of section 315 of the Act of 1915, and the claim was therefore barred by the limitation of "one year after the accident," therein contained; and, (b) That the disability upon which the claim was based was not attributable to the accident.

Another defense set up in the answer, but not included in the statement of the questions involved upon this appeal, was that notice of the occurrence of the injury had not been given defendant in accordance with the provisions of section 311, as amended by the Act of April 13, 1927, P. L. 186, 193. We shall confine ourselves to defendant's statement of questions involved, but may remark, in passing, that there is ample evidence upon the record to justify a finding that defendant had actual knowledge of the occurrence of the injury, within the contemplation of the statute.

The petition and answer came on for hearing before a referee; the result was an award of compensation for total disability, at the rate of $14.30 per week, beginning March 23, 1930; no credit was allowed defendant for the payments made by it to claimant as above recited.

Upon defendant's appeal to the board, the referee's

fourth finding of fact was revised to read: "From the beginning of her total disability until June, 1931, claimant was paid compensation from a fund supported and maintained by the defendant to provide benefits for employes suffering from disability due to sickness and accidental injuries. Under all the circumstances in the case, the benefits paid to this claimant must be considered as compensation for disability due to accidental injury. ......" The award was modified by giving defendant credit for all sums of money paid by it to claimant subsequent to March 17, 1930, and, as thus modified, was affirmed.

Defendant then appealed to the court below; under date of June 28, 1933, its exceptions to the action of the board were dismissed and judgment entered in favor of claimant upon the award as modified; this appeal is by the defendant from that judgment.

Addressing ourselves to the question whether the petition was barred by the limitation of one year, prescribed in section 315, we find this pertinent language therein: "In cases of personal injury all claims for compensation shall be forever barred, unless, within one year after the accident, the parties shall have agreed upon the compensation payable under this article [Article III]; or unless, within one year after the accident, one of the parties shall have filed a petition as provided in article four hereof. ...... Where, however, payments of compensation have been made in any case, said limitation(s) shall not take effect until the expiration of one year from the time of the making of the last payment."

Granting that the question whether the payments made by defendant were "payments of compensation," within the meaning and intendment of the section, is debatable, under the evidence, neither the common pleas nor this court is authorized to weigh that evidence; the sole inquiry is whether there is sufficient

legally competent evidence to support the finding of the compensation authorities that they were.

Several years before we had a Workmen's Compensation Law in this State, the defendant company, greatly to its credit, established an advanced and comprehensive "Plan for Employee's Pensions, Disability Benefits and Death Benefits." The plan is administered by an employee's benefit committee, with wide discretionary powers, and all expenditures made under its provisions, as well as the cost of its administration, are charged to the operating expenses of the company.

We are here concerned only with "disability benefits;" as to these, the company undertook "to provide for the payment of definite amounts to its employees when they are disabled by accident or sickness." Under the regulation applicable to an employe having claimant's length of service, the provision for total disability by reason of an accidental injury "arising out of and in the course of employment by the company" is: "(a) Total Disability—Full pay for any period of total disability during the first thirteen weeks of disability, and half pay for any period of total disability after the first thirteen weeks of disability, provided, however, that after the expiration of six years of disability payments, the benefits shall not exceed twenty dollars ($20) a week."

It is significant that the payments made by defendant were at the rate of full pay for the first thirteen weeks following the accident and weekly payments, equivalent to half pay, for fifty-two additional weeks. Defendant's building superintendent testified he recommended the payment of the additional lump sum of $250 because of claimant's financial obligations and upon the theory that it "would be approximately six months more pay at half pay." As we understand the testimony, claimant received over eleven hundred dollars, covering a total disability period of approxi-

mately ninety weeks. If a formal compensation agreement had been executed, under the statute, she would have received for the same period between twelve and thirteen hundred dollars.

Another item of evidence supporting the finding of the compensation authorities is the answer of a representative of the employee's benefit committee to an inquiry as to what accident benefits claimant would have been entitled to receive, assuming her disability was due to an accident. The answer of the witness reads: "A. Effective with the first day of disability which would have been March 17th, and would have been payable full pay for a period of thirteen weeks followed by half pay, for the duration of disability, with the understanding, however, that if half pay was less than the amount described by the Pennsylvania Workmen's Compensation Act it would be increased to the amount to meet the requirements of the act."

The opposing contention of defendant is that the payments were made as "sickness disability benefits." For an employee whose term of employment has been more than five and less than ten years, the plan specifies as sickness benefits "full pay thirteen weeks; half pay thirteen weeks." The explanation is made that the payments for the first twenty-six weeks were made in accordance with this provision and the additional payments as "other benefit payments," authorized by the plan, when recommended and approved by the proper officials.

In support of its contention defendant points out that claimant was first reported as disabled by sickness, with a provisional diagnosis by her physician of "acute myositis and acute neuritis"; that when leave of absence was applied for in September, 1930, the reason assigned was that claimant was suffering with "acute osteo-arthritis or osteo-chronditis of lower dorsal and lumbar vertebrae"; and that the "nature

of disability" entered upon the records of the committee was "osteo-arthritis of the spine."

It makes little difference, in our opinion, by what name the payments were called by the committee or what cause of disability was placed upon its records, or that the printed form used in making the original report was entitled "Report of sickness disability," rather than the form for accident disability.

The material matters for consideration by the referee and board, upon this branch of the case, were that the proper representatives of the defendant knew claimant had met with an accident; that she was totally disabled within three days thereafter; and that the policy of defendant was to pay an employee, disabled by an accident in the course of her employment, "benefits" in the same amounts as the compensation payments prescribed by our Workmen's Compensation Law.

The purpose of the proviso to section 315 was pointed out in Chase v. Emery Manufacturing Co. 271 Pa. 265, 113 A. 840.

We think there was sufficient competent evidence upon this record to meet the requirements specified in the authorities. Paolis v. Tower Hill C. Coke Co., 265 Pa. 291, 108 A. 638; Elkins v. Cambria Library Assn., 82 Pa. Superior Ct. 144; McGuirk v. Sun Shipbuilding Co., 80 Pa. Superior Ct. 457.

The remaining inquiry is whether there was sufficient competent evidence to sustain the finding of the referee, affirmed by the board, that claimant, at the time of the hearing, was totally disabled "because of this accident." In order to make the injury which she accidentally suffered on March 13, 1930, compensable under the statute, the burden was upon claimant to show that it was either the sole cause of her disability, or, at least, that it had so aggravated an existing physical condition that her disability resulted from

such aggravation: Zionek v. Glen Alden Coal Co., 105 Pa. Superior Ct. 189, 160 A. 154.

It is a well established principle that the fact that an employee may have a chronic ailment, which renders him or her more susceptible to an injury than an ordinary person would be, does not defeat such employee's right to compensation: Jones v. United Iron and Metal Co., 99 Pa. Superior Ct. 394.

. The contention on behalf of claimant is that the injury to her back so aggravated a latent condition of osteo-arthritis that total disability resulted almost immediately.

Conflicting opinions were expressed by the medical experts as to whether there was a causal connection between the injury and claimant's disability. If the finding depended solely upon the opinion evidence of claimant's physician, we would have difficulty in concluding that it measures up to the prescribed standards. He testified that claimant had infected teeth and tonsils and we understand his theory to be that the accident may have so injured the muscles and joints in the lower part of her back that the infection, which otherwise would not have given trouble, settled at the seat of the injury, thereby causing the disability. His strongest detailed expression of an opinion, that the disability resulted from the accident, followed an explanation that an injury such as claimant suffered lowers the normal resistance of the tissues and makes them a prey to infection. It reads: "I told you I felt that this local area, this local injury, was receptive of something which might never have happened had not this injury occurred. That the focal infection would not prey and remain there and would not give any trouble. On account of this injury, that infection would settle there and set up this something that I diagnose as chronic osteo-arthritis of the spine, as a result of the infection settling itself there. ......

Trauma will produce the local lesion, which local lesion by lowered resistance lasting over a long period of time and any residual infection settling there may be and can be the possible cause of the development of an osteo-arthritis. ...... It seems to me now, from the X-rays all being negative as regards dislocation, fracture, or any other injury, that this subsequent development of osteo-arthritis which is there now seems to me to be the actual thing that's causing most of the suffering, in fact all of the suffering, in keeping up a local area of inflammation.''

But the finding does not depend solely upon medical testimony. Outstanding and uncontroverted facts, appearing from the record, were that claimant, a married woman forty-one years of age, had never had any trouble with her back and had worked for defendant as an elevator operator for six years with only occasional interruptions due to colds and a minor injury to her hand. While returning from the lunch room in defendant's building she slipped on a stairway, fell and struck her back on the edge of a step; immediate, constant and severe, pain ensued, and total disability resulted within three days.

We think the presence of these facts, coupled with the testimony of claimant's physician, furnishes adequate support for the conclusion that the injury suffered through her fall is compensable.

Judgment affirmed.