Creighton, Appellant, *v.* Continental Roll & Steel Foundry Company et al.

166

Argued April 21, 1944. Before KELLER, P. J., BALD-RIGE, RHODES, HIRT and RENO, JJ. (KENWORTHEY and JAMES, JJ., absent).

*Philip R. McLaughlin,* with him *Campbell, Wick, Houck & Thomas,* for appellant.

*William A. Challener, Jr.,* with him *William A. Challener,* for Continental Roll & Steel Foundry Co., appellee.

*S. H. Torchia,* with him *Ralph H. Behney,* and *James H. Duff,* Attorney General for Commonwealth, appellee.

Opinion by Keller, P. J., July 15, 1944:

This claim was originally filed by E. E. Creighton, an employee of the defendant company, under the Occupational Disease Compensation Act of July 2, 1937, P. L. 2714, a supplement to the Workmen's Compensation Act. The claimant having died after compensation for the entire amount payable to him, $3,600, had accrued, his widow, and only dependent, was substituted as claimant under the provisions of section 410 of the Workmen's Compensation Act, as amended in 1937, P. L. 1552, and has taken this appeal from the judgment of the court below, which sustained the decision of the Workmen's Compensation Board, that her husband had already received full compensation under the act, and entered judgment in favor of the employer and the Commonwealth.

Mr. Creighton, whom we shall call the claimant, was the oldest employee of the Duquesne Steel Foundry division of the defendant company. He worked for that company in this state as an inspector of castings from August 1900 to April 28, 1938, when he became totally disabled as a result of silicosis contracted in defendant's employment, in an occupation having a silica hazard. He filed his claim for compensation on August 12, 1938. The defendant's answer denied that claimant had silicosis, or was disabled as a result of that disease, or that he had been employed by it in an occupation having a silica hazard; but the findings of the board supporting the claimant's petition in those respects are not here questioned, and his averments as to his being entitled to compensation for total disability as a result of silicosis contracted in defendant's employment, and the liability of the employer and the Commonwealth to pay him compensation, are admitted. The question here involved is whether this liability has been discharged by certain payments made to the employee by the employer.

On June 21, 1938, Mr. Troutman, defendant's vice president wrote to Mr. Spencer, its secretary-treasurer, the following letter:

"Effective May 1, 1938, please place E. E. Creighton on the salary list at the rate of $150.00 per month. This man is permanently disabled and has a serious case of tuberculosis and is the oldest employee at the Duquesne Steel Foundry. He will receive for [26] weeks sick benefits. Checks for same will be turned into the company. The sick benefits as I understand it will be approximately $20.00 per week."

These payments of $150 per month continued from May 1, 1938 to the date of final hearing, 43 months, and amounted to $6,450.

Their nature was explained, on cross-examination, by Mr. Schirra, defendant's safety director, called as its witness, as follows:

"Q. Was there any agreement by which the company was bound to continue these payments for any definite period of time?

A. No.

Q. Were those just voluntary payments made by the company?

A. That's correct.

Q. Those payments were made in consideration of Mr. Creighton's long service with the company, as well as his disability, were they not? ......

A. I'd like to answer that question and say that it was made in consideration of his past long service with the company—it was not made in consideration of disability connected with his service."

The claimant was asked the following question by his counsel:

"Are these payments, which you have been receiving, being made to you in consideration of your disability?" He replied:

"No, there's really no agreement made, but my under-

standing was that I was on the sick list, and I am being paid monthly, not daily wages. I understood it was being paid in that way because I was off sick."

Out of the $150 monthly payments to him, the company every month deducted $1.50 due by him for social security payments, and $2.80, due by him for group insurance.

As noted in Mr. Troutman's letter, claimant became entitled to sick benefits, from group insurance, of $20 per week for 26 weeks from May 1, 1938, or $520 in all, but under the company's arrangement with him, these insurance checks were turned over to it, so that, in effect, his salary was that much less, while the sick benefits were being paid.

The position of the company, in effect was, that it denied that the claimant was suffering from silicosis, or any other *disability for which it was liable to pay compensation.*[1] It recognized that he had tuberculosis to such an extent that he was unable to do any work, but denied that his tuberculosis was the result of anything for which it was legally responsible. Because he was the oldest employee of one of its divisions and was unable to work because of illness, it kept him on the pay roll at a monthly salary about equivalent to the wages he had previously earned as an inspector of castings; but in making these voluntary payments, it was clearly not defendant's intention that they should be over and above, or in addition to, any payments made to the claimant because of his illness, for it distinctly imposed the condition that the claimant's weekly $20 insurance checks, paid him under his group insurance policy for sickness, for 26 weeks, were to be turned over to the company; thus indicating that the payment of $150 a month would be the total amount payable by it to its old employee for any cause whatever.

---

[1] This is the sense in which the defendant company and its witnesses used the words 'disability' and 'disabled'.

The referee found, as his seventh finding of fact, "That the defendant company has paid and is paying at the present time the claimant's full salary of $150 per month in lieu of compensation."

In his conclusions of law he ruled that claimant was entitled to receive compensation of $18 per week under the provisions of said Occupational Disease Compensation Act, in connection with schedule 306(a) of the Workmen's Compensation amendment of 1937, P. L. 1552, not exceeding a total of $3,600, of which nine-tenths, or $16.20 weekly, and $3,240, in all, should be paid by the Commonwealth, and one-tenth, or $1.80 weekly, and $360, in all, should be paid by the employer. He further held (3rd conclusion of law) that "as claimant is being paid full wages by the defendant in lieu of compensation, the defendant, Continental ...... is entitled to have the payment of compensation by it suspended until such time as the defendant, Continental ...... ceases to pay wages in lieu of compensation"; and (4th conclusion) "Since the Commonwealth of Pennsylvania and/or the Second Injury Reserve Fund are not entitled to the suspension of their share of the award to be made to the claimant, they are not entitled to a suspension of payments of their share of the compensation."

He awarded compensation to the claimant in conformity with said findings and conclusions.

On appeals to the board by the Commonwealth and the employer respectively, the former complained of the referee's fourth conclusion of law and the award of compensation against the Commonwealth; and the latter complained of the referee's sixth finding of fact, which, in substance, found that claimant, in his employment with defendant company, had contracted silicosis from his contact with dusty air containing free silica, and because of this had contracted tuberculosis; as a result of which diseases he had been totally disabled since

April 28, 1938—a matter not now in dispute. It also complained of the referee's conclusions of law resulting from said finding, and particularly in failing to find that the employer had paid wages in lieu of compensation in excess of any possible liability on its part to pay compensation, and in making any award of compensation against it.

In disposing of the appeals, the board affirmed all the referee's findings of fact, but set aside his second, third and fourth conclusions of law, and substituted therefor its own, holding in effect, (1) that the payments of $150 per month made by the employer to the claimant included his compensation of $18 per week, and as the aggregate of those payments exceeded $3,600, the limit of compensation fixed in section 5 of the Occupational Disease Compensation Act for silicosis, it is entitled to receive credit for the payments so made, and is thereby discharged of liability on said award; and (2) that since the defendant employer has paid claimant a total of $6,450, an amount in excess of the limit of total compensation of $3,600, it has discharged the joint liability of both the employer and the Commonwealth, and no liability attaches to the Commonwealth to pay its share of the award to the claimant; and, accordingly it sustained the appeals.

The claimant appealed to the court of common pleas, and upon its sustaining the decision and order of the board, he appealed to this court.

A preliminary question arises from the action of the court below in holding that the claimant, not having appealed to the board from the referee's seventh finding of fact, supra,[2] has no standing to press an appeal from the board's decision concerning that finding, under our ruling in *Nesbit v. Vandervort & Curry*, 128 Pa. Su-

---

[2] "Seventh: That the defendant company has paid, and is paying at the present time, the claimant's full salary of $150 per month, *in lieu of compensation*." (Italics supplied).

perior Ct. 58, 193 A. 393, where we said, (pp. 64, 65) : "A failure to except to specific material findings of fact of the referee in an appeal to the board is tantamount to an acceptance of, or acquiescence in, those findings, and objection cannot afterwards be taken, on appeal from the board to the common pleas, to findings of fact of the referee *not questioned on the appeal to the board.*" We are of opinion that that ruling does not apply to or control this case. In the first place, it is applicable strictly to true findings of fact; it does not apply to conclusions of law mistakenly included in or added to real findings of fact. That the defendant company has paid and is paying claimant a salary of $150 a month, although he is totally disabled and performing no work for his employer, is a true finding of fact; but that these payments are 'in lieu of compensation'—which is what the claimant objected to—is not a finding of fact, but a legal conclusion, which, properly, should have had no place in a finding of fact, but should have been stated as a conclusion of law. Many questions which arise in a workmen's compensation case, such as, the legal effect of a payment; whether an employee was at the time of his injury acting within the scope of his employment or was furthering his employer's business; whether, where the evidence is practically undisputed, the claimant was an employee or an independent contractor; and mixed questions involving law as well as fact, are not within the rule, either as respects the finality of the board's action, or the necessity for specific assignment on appeal from the referee.

Secondly, the rule is expressly confined, by its language, to cases where a party has taken an appeal from a referee to the board, and holds that *such an appellant* cannot afterwards, on his further appeal from the board to the common pleas object for the first time to *findings of fact*—in the sense above stated—not questioned by him on his appeal to the board. When we consider

that, under the procedure prescribed by the Workmen's Compensation Act, a claimant can appeal from the referee only if his claim has been disallowed, or an employer, only if an award is made against him—that the right to appeal from the findings of fact of the referee is conjoined with the award, or disallowance, of compensation, respectively, (sec. 423)—we can see how unfair it would be to hold a party concluded by findings that he could not question or appeal from, until some body, board or court has ruled against him on an appealable matter. Therefore, we uphold the right of the claimant to raise in the court below, and here, the question whether the employer's payments to him were "in lieu of compensation", whatever that may mean.

One thing is certain, and that is, that 'in lieu of compensation' does not mean 'by way of compensation'. 'In lieu of' means 'in place of' or 'instead of'.

The decisions hold that when an employee is *totally disabled* and the employer, while denying any liability for workmen's compensation, nevertheless pays the employee regular stated amounts, weekly or monthly, either out of its own general funds, or out of sick or accident benefits or relief funds contributed by it, not as wages or salary for work performed, but in relief of the employee's incapacity to labor, on its being determined that the employee is entitled to workmen's compensation, the amount paid by the employer discharges its liability for compensation *for the weeks* in which its payments to him equalled or exceeded the compensation payable. *Long v. Philadelphia,* 150 Pa. Superior Ct. 631, 29 A. 2d 243; *Somerton v. Bell Tel. Co.,* 111 Pa. Superior Ct. 264, 268, 169 A. 579; *Cotton v. John Wood Mfg. Co.,* 126 Pa. Superior Ct. 528, 191 A. 189; *Tinsman v. Jones & Laughlin Steel Corp.,* 118 Pa. Superior Ct. 516, 523, 180 A. 175; *Hunter v. Mailey,* 91 Pa. Superior Ct. 350; *McGuirk v. Sun Shipbuilding*

*Co.,* 80 Pa. Superior Ct. 457. It is only where the employee is not totally disabled and actually performs some labor for which he is paid wages or salary (*Chase v. Emery Mfg. Co.,* 271 Pa. 265, 268-9, 113 A. 840; *Hickey v. Cudahy Packing Co.,* 153 Pa. Superior Ct. 45, 33 A. 2d 285) that such payments will not extend the time within which the claim petition must be filed or discharge the employer's liability for compensation for the weeks in which its payments equalled or exceeded the compensation payable.

The board was wholly wrong in its conclusion that payments so made by the employer to the employee in excess of the weekly compensation payable by it, could be credited on future instalments of compensation. This is ruled by *Chase v. Emery,* supra, p. 270 and *Long v. Phila.,* supra, p. 635. In the former, the Supreme Court said "Nor does the amount paid plaintiff over that allowed by law as compensation alter this conclusion. It was shown to be a pure gratuity." In the *Long* case, this court said: *"During such weeks* when the payments under the ordinance are *equal to or exceed* the weekly amount due on the compensation award, *liability on the award is discharged."* (Italics supplied).

A payment of $150 a month is the equivalent of $34.62 a week. The compensation awarded to the claimant was $18 per week. If all of it had been payable by the employer, the excess payment of $16.62 weekly would not have been applicable to future weeks, it would simply have discharged the liability for that week; the overplus would be a mere gratuity. So at the end of a year, out of the $1,800 paid claimant, $936 would discharge the employer's liability for compensation for one year, and the remainder, $864, would be a mere gratuity not to be credited on future compensation payments.

But all of the compensation awarded this claimant was not payable by the defendant employer. Only onetenth of it was payable by it; the other nine-tenths

were payable by the Commonwealth. We do not agree with the board and court below that the use of the word 'jointly' in section 7(a) of the Act of 1937 (P. L. 2714, p. 2716)—"payable jointly by the Commonwealth and the employer", means 'jointly' as used in notes and instruments imposing a joint obligation on both parties to pay the *whole*. The context clearly shows that the word 'jointly' is used in the sense of 'together', and that for disability occurring in the first year in which the act became effective, the obligation of the Commonwealth was to pay nine-tenths of the compensation, and the employer's obligation was to pay one-tenth; and that neither was responsible for any default of the other, and an overpayment by one did not inure to the benefit of the other. The liability of each is fixed and the amount payable by each is not increased or decreased by any act or default of the other. And the amount payable by both was limited to $18 a week for 200 weeks, or $3,600 in all, of which the employer would pay $360, in weekly payments of $1.80, and the Commonwealth would pay $3,240 in weekly payments of $16.20 each. The ability of an individual employer to pay more is not a factor in the case.

Consequently, when the employer paid claimant $34.62 a week—the equivalent of $150 a month,—it discharged its liability for compensation for one week $1.80, and the remainder, $32.82 was a pure gratuity, not to be credited on future payments due by it or by the Commonwealth; and when during a year it paid the claimant $1,800, it discharged its liability for 52 weeks, or $93.60, and the balance, $1,706.40, was a mere gratuity not to be credited to future payments of compensation due by any one, the employer or the Commonwealth. Certainly there is not the slightest warrant for holding that when the employer made these payments of $150 a month to the claimant it had any thought of paying anything in relief or discharge of the Commonwealth's obligation.

At the time of the last hearing the employer had paid claimant $150 a month for three years and seven months, 43 months—186-1/3 weeks—in the aggregate amount of $6,450, of which its liability for compensation was $335.40, and the rest, $6,114.60 was pure gratuity to an old and valued employee. This left only compensation @ $1.80 a week for 13-2/3 weeks, or $24.60, unpaid by it; and, by the award of the referee, payment of that was suspended, while the company was paying claimant $150 per month.

But payment of this amount by the employer, in recognition of the illness and incapacity to labor of an old and faithful employee, had no effect whatever on the separate liability of the Commonwealth—which was several, and wholly distinct from that of the employer— to pay the claimant $16.20 a week for a period not exceeding 200 weeks, or $3,240 in all.

It is well settled that an employer has no right, by voluntarily anticipating his payments to his employee, to shorten the period of his liability. If an employer has been ordered to pay his employee compensation for total disability of $15 a week for 500 weeks, not exceeding a total of $6,500, he cannot by voluntarily paying $30 a week be relieved of paying compensation after 216-2/3 weeks; the excess of $15 is a mere gratuity that does not affect his liability. He is still liable to pay $3,250 more at the rate of $15 a week.

So too, if two employers are each ordered to contribute a certain amount by way of compensation to an employee of both, any excess or default in payments by one will not affect the liability of the other. Each is liable to pay only the weekly compensation ordered to be paid by him, and his liability is not affected by his own voluntary overpayments or by the overpayments or underpayments of the other.

Voluntary payments made by an employer, out of regard for the faithful services of an old employee do not

affect the liability of the employer beyond discharging his liability for the particular week or weeks then due, and they have no effect whatever on the separate and distinct liability of the Commonwealth under the Occupational Disease Compensation Act.

The case was correctly decided, in accordance with the law, by the referee.

The judgment of the court below is reversed and the record is ordered remitted to the board, with directions to enter an award in favor of the claimant, in consonance with this opinion—one-tenth to be paid by the employer, subject to credits for the number of weeks covered by the monthly payments made by it, and nine-tenths to be paid by the Commonwealth, without any credits for the payments made by the employer.

It is so ordered.