## Vanino *v.* Textile Machine Works, Appellant.

Argued September 26, 1956. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, and CARR, JJ. (HIRT, and ERVIN, JJ., absent).

*John S. McConaghy,* for appellants.

*C. Wilson Austin,* for appellee.

OPINION BY RHODES, P. J., March 20, 1957:

This is a case arising under The Pennsylvania Occupational Disease Act in which claimant was given an award for the death of her husband resulting from silicosis.

Two questions are raised on this appeal by the employer: (1) Is the employer entitled to credit against the award for certain sick benefits and voluntary payments made to deceased in his lifetime? (2) Was the finding of the Workmen's Compensation Board as to the date of total disability arbitrary or capricious? The employer does not question deceased's exposure to a silica hazard or that his death was caused thereby.

Deceased, having become disabled, was unable to work from December 28, 1951, to January 7, 1952. He resumed work, but he was again disabled from February 2, 1952, until May 13, 1952. He returned to work on May 13, 1952, and continued until July 12, 1952, when he became entirely unable to work. He

died on January 13, 1953. No claim for compensation was filed by deceased in his lifetime. During the periods he was disabled, however, he was paid certain payments from an employe's benefit association and from the employer. Between December 28, 1951, and September 29, 1952, deceased was paid $45.50 per week from the Textile Employees' Benefit Association for the weeks during which he was unable to work, a total of twenty-six weeks. The employer contributed $2.75 per month to these funds, and the employe $1.10. The employer claims credit against the award for the alleged proportionate part arising from its contribution, to wit, $32.53 per week. The Workmen's Compensation Board, in disposing of these payments, considered them in two groups: (1) Those payments made between December 28, 1951, and July 12, 1952, when the employe ceased work entirely, and (2) those payments made from July 12, 1952, to September 29, 1952. The board refused to allow the employer credit for the first group on the ground that such payments were made prior to the complete inability of deceased to work and thus could not be set off against the award for total disability or death. Credit for the second group was also disallowed by the board on the ground that they were in the nature of "fringe benefits—capital or wages . . ."

Additional payments (a third group) are also involved. From November 1, 1952, until deceased's death on January 13, 1953, the employer voluntarily paid $130 per month to deceased in order to provide him and his family with an income. The board refused to give the employer credit for these payments and stated: "There is evidence furnished by the defendant's witness that these sums were voluntarily given by defendant to decedent as a gratuity and not intended as compen-

sation." The court of common pleas affirmed the board in refusing the employer credit against the award for any of the enumerated payments.

The controlling principles on matters of this nature were set forth by President Judge KELLER in *Creighton v. Continental Roll & Steel Foundry Company,* 155 Pa. Superior Ct. 165, 173, 38 A. 2d 337, 341, as follows: "The decisions hold that when an employee is *totally disabled* and the employer, while denying any liability for workmen's compensation, nevertheless pays the employee regular stated amounts, weekly or monthly, either out of its own general funds, or out of sick or accident benefits or relief funds contributed by it, not as wages or salary for work performed, but in relief of the employee's incapacity to labor, on its being determined that the employee is entitled to workmen's compensation, the amount paid by the employer discharges its liability for compensation *for the weeks* in which its payments to him equalled or exceeded the compensation payable." See, also, *Schrecengost v. O. K. Heilman Trucking Company,* 174 Pa. Superior Ct. 299, 101 A. 2d 417.

We think the rule as stated in the *Creighton* case is clear, and its application to the instant case is not difficult. In the first group were the payments made by the benefit association from February 2, 1952, to May 13, 1952, in the amount of $45.50 per week. Deceased had also been paid for one week before February, 1952. These benefits were paid for loss of work prior to May 10, 1953, the date established by the board for the beginning of deceased's total disability. Although deceased returned to work on May 13, 1952, and continued until July 12, 1952, he did not receive benefits from the association during this time. The benefits paid prior to his total disability and prior to

his complete cessation of work cannot be considered compensation for which a credit is due. "It is only where the employee is not totally disabled and actually performs some labor for which he is paid wages or salary (Chase v. Emery Mfg. Co., 271 Pa. 265, 268-9, 113 A. 840; Hickey v. Cudahy Packing Co., 153 Pa. Superior Ct. 45, 33 A. 2d 285) that such payments will not extend the time within which the claim petition must be filed or discharge the employer's liability for compensation for the weeks in which its payments equalled or exceeded the compensation payable." *Creighton v. Continental Roll & Steel Foundry Company,* supra, 155 Pa. Superior Ct. 165, 174, 38 A. 2d 337, 341. Until deceased was totally disabled from the silicosis, there was no compensation payable to him. Section 301 (e) of The Pennsylvania Occupational Disease Act, as amended, 77 PS §1401 (e). The payments prior to May 10, 1952, cannot be considered as discharging any liability of the employer for compensation.

The second group were those payments made from July 12, 1952, to September 29, 1952, by the benefit association which were found by the board to be "a return of fringe benefits—capital or wages . . ." They were admittedly paid while deceased was totally disabled and during a period in which he performed no work and earned no wages. Whether or not a credit should be allowed can be determined only after consideration of the nature of the benefit association and the manner of contribution and payment. The benefit association is a separate and distinct entity from defendant-employer. Its funds are derived from contributions made by the employes and the employer; payments are made for sickness or accident. Membership in the association is purely voluntary; although most

of the employes belong to the association because of its benefits, there are some who do not. Where an employe is covered by workmen's compensation for an injury or illness, he receives the full benefits which the association pays in addition to the amounts paid to him under the compensation laws for the first six weeks of disability after which the amounts paid by the benefit association are reduced by the amount of the workmen's compensation payments.

The employer contends that the credit should be allowed for these payments because its contribution toward the weekly benefits is $2.75 per month while the employe contributes only $1.10. The case of *Somerton v. Bell Telephone Company of Pennsylvania*, 111 Pa. Superior Ct. 264, 265, 169 A. 579, is urged as controlling. In that case the Bell Telephone Company established, prior to the workmen's compensation laws, an association to provide disability, pension, and death benefits for its employes. The employes alone administered the plan with wide discretionary powers, and all expenditures including the cost of administration were paid in full by the Bell Telephone Company. In the present case the plan is purely voluntary on the part of the employe; and the employer does not provide all the funds for the operation of the association and the payment of benefits. The weekly benefits made by the benefit association are not payments made by the employer as compensation out of its own funds or funds provided by it alone. Moreover, the additional and persuasive consideration is the fact that under the regulations of the association, where an employe is incapacitated for reasons which entitle him to workmen's compensation, the association benefits are not paid in place of the compensation but rather in addition thereto in full for the first six weeks and less the amount

of workmen's compensation thereafter. See *Creighton v. Continental Roll & Steel Foundry Company*, supra, 155 Pa. Superior Ct. 165, 173, 38 A. 2d 337; *Schrecengost v. O. K. Heilman Trucking Company*, supra, 174 Pa. Superior Ct. 299, 302, 101 A. 2d 417. The payments by the association were not intended to replace workmen's compensation as a relief of the employe's incapacity to labor but to provide a purely voluntary and private benefit for sickness and accident. In *Somerton v. Bell Telephone Company of Pennsylvania*, supra, 111 Pa. Superior Ct. 264, 270, 169 A. 579, it appears that the association benefits were payable as compensation and not in addition thereto. If the position of the employer were sustained here, it would mean that the benefit association has paid compensation to deceased which should have been paid by the employer; this is contrary to the association's rules. Whereas deceased would have received only the benefits paid by the association for the first six weeks after July 12, 1952, another employe, whose claim was not contested by the employer, would have received the association benefits in addition to the compensation due him for that period. Under the circumstances, the employer is not entitled to a credit for the payments made by this association.

The third group, the voluntary payments of $130 per month ($30.02 per week—4.33 weeks per month) made solely by the employer for the three months beginning November 1, 1952, must be considered compensation instead of a mere gratuity as the board concluded. It is immaterial what the payments were called; they were paid by the employer in relief of deceased's incapacity to perform work and hence were compensation for which credit should be given. *Creighton v. Continental Roll & Steel Foundry Company*, supra, 155

Pa. Superior Ct. 165, 173, 38 A. 2d 337. But, as we view it, credit is not to be allowed for the full amount paid by the employer. Under the act and our decisions, credit is allowable to the extent that the payments covered the employer's liability for the weeks in which compensation was due. *Creighton v. Continental Roll & Steel Foundry Company,* supra, 155 Pa. Superior Ct. 165, 174, 175, 38 A. 2d 337. This means that the employer is entitled to a credit for the weeks during which the payments were made and not for the amount of the payments. It should also be noted that the credit to be given the employer on his liability for 60 per cent of the compensation under the act (Section 308 (a), 77 PS §1408 (a)) does not operate to offset the 40 per cent share payable by the Commonwealth even though the employer's voluntary payments were in excess of his liability. *Creighton v. Continental Roll & Steel Foundry Company,* supra, 155 Pa. Superior Ct. 165, 175, 176, 38 A. 2d 337. Although the award is on the claim of the widow and children of deceased, such payments made by the employer to deceased in his lifetime must be deducted therefrom (Section 306 (g), 77 PS §1406 (g)).

Appellant-employer also questions the board's finding that deceased became totally disabled on May 10, 1952. The testimony was conflicting to some degree, and the board, acting within its function as fact-finder, accepted the testimony of one of the doctors. The finding is amply supported by the evidence. See *Loudon v. H. W. Shaull & Sons,* 140 Pa. Superior Ct. 106, 110, 13 A. 2d 129.

The order is reversed, and the record is remanded to the court below with direction to return it to the board for modification of the award in accordance with this opinion.