60

Duquesne Light Company, Petitioner *v.* William H. Bundy, Respondent.

Argued December 4, 1979, before Judges Wilkinson, Jr., Rogers and Blatt, sitting as a panel of three. Reargued May 6, 1980, before President Judge Crumlish and Judges Wilkinson, Jr., Mencer, Rogers,

Blatt, Craig and Williams, Jr. Judge MacPhail did not participate.

*John A. Lee*, for petitioner.

*I. C. Bloom*, of *Bloom, Bloom & Associates*, for appellee.

Opinion by Judge Rogers, January 11, 1980:

The Duquesne Light Company (Duquesne) has appealed from an order of the Workmen's Compensation Appeal Board affirming a referee's award of benefits to William H. Bundy for injuries sustained in the course of his employment for Duquesne.

Mr. Bundy was employed by Duquesne as a welder for more than thirty-two years. He sustained work related injuries to his left knee in 1973 and to his right knee in 1974 and he received workmen's compensation benefits for periods of disability on account of each incident. He returned and worked for fourteen months until March 22, 1976 when he tripped on a raised grating on the floor of Duquesne's premises and fell on his left side. Mr. Bundy was unable to return to work after that date and he was paid workmen's compensa-

tion benefits at the rates established by his earlier injuries.

Mr. Bundy subsequently filed a claim petition for compensation benefits at higher 1976 rates, claiming that his fall on March 22, 1976 caused a new injury to his left knee. A referee conducted hearings at which Mr. Bundy and a fellow employee testified and letters from Dr. C. W. Vates and hospital records were received. The referee found that Mr. Bundy was totally disabled as the result of his March 22, 1976 injury and he awarded compensation accordingly. Duquesne appealed the award to the Board of Appeals which affirmed the referee. This appeal followed.

Duquesne first says that there is insufficient medical evidence to support a finding that a new injury on March 22, 1976 caused Mr. Bundy's disability. We disagree. The record contains letters from Mr. Bundy's treating physician, Dr. C. W. Vates, who wrote that Mr. Bundy had "numbness, pain and disability involving the left knee" after his fall on March 22, 1976 and that instability in the left knee "possibly arose from an injury" sometime in the Spring of 1976. Duquesne says that this evidence is insufficient to establish a causal relationship between the injury and the disability because Dr. Vates wrote only that the disability "possibly" arose from an injury and elsewhere that he found no evidence that a new injury had occurred between examinations performed on March 17, 1976 and April 19, 1976. While Dr. Vates' evidence is less than unequivocal, we have held that unequivocal medical testimony is required only where the causal connection between the injury and the disability is not obvious. *Montgomery Mills Co. v. Workmen's Compensation Appeal Board*, 26 Pa. Commonwealth Ct. 471, 364 A.2d 508 (1976). Where the record taken as a whole supports a finding of the requisite causation, equivocal statements by a physician will not preclude

the award of benefits. *Owens v. Workmen's Compensation Appeal Board*, 39 Pa. Commonwealth Ct. 510, 395 A.2d 1032 (1979).

Here, Mr. Bundy's testimony and that of an eyewitness establish that Mr. Bundy fell on March 22, 1976 and experienced pain in his left side and leg as a result of the fall. Further, it is undisputed that Mr. Bundy had regularly worked ten to twelve hours per day, seven days a week for fourteen months prior to the fall but was unable to return to work thereafter. This evidence is clearly sufficient to support the referee's finding that the March 1976 fall was the cause of his disability.

Duquesne next says that Mr. Bundy's disability in his left knee ended on May 1, 1977. It is established that the burden is on the employer so alleging to prove that an employee's disability has ceased. *Patterson v. Lenart*, 9 Pa. Commonwealth Ct. 116, 305 A.2d 778 (1973). Duquesne adduced no evidence of its own on this point but it now refers to the testimony of Mr. Bundy, to the effect that his left knee had sufficiently healed by May 1, 1977 to permit an operation to be performed on his right knee. This testimony was obviously insufficient to establish no disability on account of the left knee.

Finally, Duquesne says that it is entitled to a credit in the amount of $6,103.57 it paid Mr. Bundy during the period March 23, 1976 to October 22, 1976. These payments which seem to have been made pursuant to the terms of a collective bargaining agreement equaled the full base pay which Mr. Bundy would have received if he had been working. Duquesne would be entitled to credit against its workmen's compensation liability if it made the payments not as wages for work performed but in relief of Mr. Bundy's incapacity to work; it would not be entitled to credit if the payments were "incident[s] or benefit[s] provided under

the work agreement . . . like wages for services performed." *Temple v. Department of Highways*, 445 Pa. 539, 542, 285 A.2d 137, 139 (1971). *See also Steinle v. Workmen's Compensation Appeal Board*, 38 Pa. Commonwealth Ct. 241, 393 A.2d 503 (1978); *Creighton v. Continental Roll & Steel Foundry Co.*, 155 Pa. Superior Ct. 165, 38 A.2d 337 (1944). Here the referee expressed his belief that the payments made by Duquesne were voluntary, which would suggest that they were made in relief of Mr. Bundy's disability not for services performed; but he inconsistently held that Duquesne was not entitled to credit. The referee refused, moreover, to admit into evidence the collective bargaining agreement offered by Duquesne to prove that the payments were not in the nature of wages. The Board entirely failed to address this issue in its opinion affirming the referee's decision. Since the examination of the collective bargaining agreement could shed light on the nature of the payments in question, the referee erred in excluding it. We will therefore remand the record to the Board for hearing at which the agreement and any other competent evidence the parties desire to adduce concerning the payments may be received and a new determination made as to credit, or no.

ORDER

AND Now, this 11th day of January, 1980, judgment is entered in favor of William H. Bundy and against Duquesne Light Company and Duquesne Light Company is hereby ordered to pay compensation to William H. Bundy at the rate of $187.00 per week beginning March 23, 1976 and continuing into the future as limited by provisions of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §1 et seq. Duquesne Light Company shall pay interest at the rate of ten percent per annum on all deferred payments and shall be given

credit for any workmen's compensation benefits paid after March 23, 1976. Duquesne Light Company is further directed to pay directly to I. C. Bloom, claimant's attorney, twenty percent of each weekly payment for the first three years of compensation and to pay the balance thereof directly to William H. Bundy. The record is hereby remanded to the Board for further proceedings consistent with this opinion and for a determination of whether Duquesne Light Company is entitled to additional credit against this judgment for the period from March 23, 1976 to October 22, 1976.

This decision was reached prior to the expiration of the term of office of Judge DiSALLE.

---

OPINION BY JUDGE ROGERS, June 25, 1980:

This is the appeal of the Duquesne Light company (Duquesne) from an order of the Workmen's Compensation Appeal Board affirming a referee's award of benefits to William H. Bundy, a former employee of Duquesne. In *Duquesne Light Company v. Bundy*, 53 Pa. Commonwealth Ct. 60, 409 A.2d 975 (1980), we affirmed the Board's decision as to the award of benefits but remanded the record for further proceedings concerning what, if any, credit Duquesne should receive for payments it made to Bundy during his disability. After reargument, ordered because both parties contended that we misapprehended the facts, the record or the law, we reach the same conclusions as we had before. We do not therefore disturb our order of January 11, 1980, but we declare the following as our definitive opinion in support of our order in place of that filed before.

Bundy worked as a welder for Duquesne for more than thirty-two years. In the course of his employment, he sustained disabling injuries to his left knee in

1973 and to his right knee in 1974 and he received workmen's compensation benefits at the appropriate rates for each disability. After recovering, he returned to work for fourteen months until March 22, 1976 when he tripped on a raised grating on the floor of Duquesne's premises and fell injuring his left knee. Bundy was unable to return to work after that date and Duquesne resumed paying workmen's compensation benefits at the rate established for the 1973 injury to his left knee. For seven months following the injury, Duquesne made additional payments so that Bundy's income during this period equaled the full base pay he would have earned if he had been working. It continued paying compensation at the 1973 rate until May 1, 1977, when Bundy underwent surgery on his right knee. Duquesne thereafter paid compensation at the rate established for the 1974 injury to his right knee.

Bundy meanwhile filed a claim petition for compensation benefits at the higher 1976 rate, claiming that his disability was the result of a new injury to his left knee caused by his fall on March 22, 1976. After a hearing at which Bundy and a fellow employee testified and letters from Dr. C. W. Vates and hospital records were received, a referee by decision made April 20, 1978 found that Bundy was totally disabled as a result of a new injury to his left knee sustained on March 22, 1976 and awarded compensation accordingly. Duquesne appealed to the Board, which affirmed the referee.

There is clearly substantial evidence of record to support the referee's finding that Bundy sustained a new injury to his left knee in 1976. Duquesne contends, nevertheless, that the disability relating to the left knee terminated on May 1, 1977 when the right knee was operated on, and that it should be liable after that date only for the disability relating to the right knee at the 1974 rates. The question of whether

the disability relating to the left knee continued after May 1, 1977 was, however, one of fact for the referee, who made the following finding:

> 9. Based upon sufficient and competent medical evidence of record in this case from Dr. C. W. Vates, Jr., your Referee finds as a fact that claimant had numbness, pain and disability involving his left knee as a result of his fall at work on March 22, 1976. He had increased symptomatology following this injury and he subsequently came to a total knee replacement. Claimant is, at the present time, recovering from this. He is totally disabled from said injury.

This finding is supported by a letter of Dr. Vates dated April 3, 1978, in which he wrote: "[Bundy] had a fall on March 22, 1976, following which he had numbness, pain and disability involving the left knee. He had, certainly increased symptomatology following this injury and he subsequently came to a total knee replacement. The patient is, *at the present time,* recovering from this." (Emphasis added.) The referee was not required to infer from this or any other evidence in the record that Bundy's disability on account of the left knee terminated on May 1, 1977.[1]

---

[1] In support of its argument that the left leg disability terminated on May 1, 1977, Duquesne cites a letter in which Dr. Vates wrote that an operation would be performed on the right knee when the left knee had been sufficiently rehabilitated to permit such. Bundy testified that the left knee had healed sufficiently to permit an operation on the right knee on May 1, 1977. Even if believed this evidence does not require a finding that the disability—that is, the inability to work—caused by the injury ceased when the left knee healed sufficiently to permit an operation on the other leg.

Duquesne also refers to a final receipt which it says Bundy signed in 1977 for his left knee injury. This receipt is not in the record and cannot be considered as evidence that Bundy was no

Duquesne next says that it is entitled to credit against its workmen's compensation liability in the amount of $6,103.57 it paid to Bundy from March 23, 1976 to October 22, 1976. Duquesne would be entitled to such a credit if it made the payments in relief of Bundy's incapacity to work and not as "incident[s] or benefit[s] provided under the work agreement ... like wages for services performed." *Temple v. Department of Highways*, 445 Pa. 539, 542, 285 A.2d 137, 139 (1971). *See also, Steinle v. Workmen's Compensation Appeal Board*, 38 Pa. Commonwealth Ct. 241, 393 A.2d 503 (1978); *Creighton v. Continental Roll & Steel Foundry Co.*, 155 Pa. Superior Ct. 165, 38 A.2d 337 (1944). Here, the referee made the following conclusion:

> 3. The self-insured defendant is not entitled to credit for voluntary payments it made to claimant from March 23, 1976 through October 22, 1976 in the total sum of $6,103.57. These were not workmen's compensation payments.

The referee's characterization of the payments as "voluntary" suggests that they were made in relief of Bundy's disability. However, he made the inconsistent conclusion that Duquesne was not entitled to credit. We will therefore remand the record to the Board for a hearing to resolve this inconsistency and the parties at that time may adduce additional evidence concerning these payments.

---

longer disabled as a result of his left knee injury. Furthermore, the only reference to the final receipt in the record is Bundy's admission that he signed a receipt for compensation due him as a result of the 1973 injury to his left leg. A final receipt for compensation due as a result of a past injury is clearly irrelevant to the question of disability from a new injury.