**Lawrence SCHIAVO, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (WESTINGHOUSE ELECTRIC CORP.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 5, 1999.

Decided Sept. 2, 1999.

---

Robert J. Radano, Drexel Hill, for petitioner.

R.D. Harburg, Philadelphia, for respondent.

Before DOYLE, J., PELLEGRINI, J., and McCLOSKEY, Senior Judge.

DOYLE, Judge.

Lawrence Schiavo (Claimant) appeals from an order of the Workers' Compensation Appeal Board (Board) affirming an order of a Workers' Compensation Judge (WCJ) which had dismissed his claim petition as untimely filed under Section 315 of the Workers' Compensation Act (Act).[1]

Claimant was employed as a supervisor with Westinghouse Electric Corporation (Employer) for fifteen years. In his capacity as a supervisor, Claimant was re-sponsible for monitoring the productivity of both union and non-union employees of Employer's turbine division. Claimant's duties included disciplining employees who did not maintain an acceptable level of productivity.

On July 22, 1982, Claimant drove into Employer's facility after returning from his lunch break and was struck in the head and face by a brick which was thrown through his car window by an unknown person, rendering him unconscious. Claimant was immediately taken to Taylor Hospital in Delaware County. As a result of being hit by the brick, Claimant sustained severe bruises on his head, experienced double vision and ringing in his ears, had his jaw knocked out of alignment and suffered injuries to his nose. These injuries required Claimant to undergo two surgical procedures.

Following his injury, Claimant could not perform any work for Employer or any other employer, and his physician, Doctor Robert Schwartz, opined that Claimant could no longer perform any type of work. However, Claimant continued to receive his full rate of pay from Employer for two months under Employer's salary continuation program, and, following that, he received 26 weeks of accident and sickness benefits which ended in March of 1983.[2]

After March of 1983, Claimant began to receive monthly benefits in the amount of $1,506 under a management disability policy, the maximum amount he could receive under that policy; under the policy, these payments would continue until Claimant reached age 65. Unlike the salary continuation and accident and sickness benefits, which were paid by and funded exclusively by Employer, the management disability policy was funded by the monthly contributions of eligible employees such as Claimant.

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 602.

2. The record does not indicate the amount of the accident and sickness benefits, but Claimant's average weekly wage for compensation purposes was $579.23.

On October 10, 1989, Claimant filed a claim petition seeking benefits for the July 22, 1982 injury. Employer filed a timely answer, asserting that Claimant's claim petition was not filed within three years of the date of his injury, and hearings were held before a WCJ.

During the hearings, Claimant testified to the above events. He stated that his work with Employer placed him in tense situations because he had to deal with union and non-union members and occasionally reprimanded employees if they did not perform their jobs properly. Claimant also testified that, as of the date of the hearings before the WCJ, he continued to receive management disability benefits.

In addition, Claimant's wife testified in support of his claim petition. She stated that, following her husband's injury, she handled the household finances. She indicated that she received a letter from Employer, dated February 14, 1983, which indicated that, effective March 1, 1983, Claimant would be placed on management disability and would receive $1,506 per month. Mrs. Schiavo also stated that, after receiving the letter, she spoke with Sharon McIlhenny, Employer's human resources representative, and Mrs. McIlhenny informed Mrs. Schiavo that Claimant would receive management disability instead of workers' compensation benefits.

Finally, Claimant offered a letter from his treating physician, Doctor Robert Schwartz, which indicated that Claimant suffered from dizziness, daily headaches and visual problems. Dr. Schwartz indicated in his letter that Claimant's visual problems, by themselves, precluded Claimant from performing any type of work.

In response, Employer presented the deposition testimony of Ms. McIlhenny who stated that the management disability plan is funded by the premiums of participating employees. She indicated that, since his enrollment in the plan in 1979, Claimant had paid $482.40 in premiums over a period of approximately four years and that, at the time of her deposition, he was receiving $582.50 per month from management disability and $433.22 per month under a disability pension plan.[3] Ms. McIlhenny testified that any amount of workers' compensation benefits that Claimant would receive would be offset by a reduction of that same amount from his monthly management disability benefits. She noted, however, that Claimant would always receive at least $50 per month in management disability benefits under the terms of the plan. Ms. McIlhenny further testified that she never had a discussion with Claimant or his wife concerning workers' compensation.

On October 23, 1996, the WCJ issued a decision denying Claimant's claim petition. The WCJ concluded that, although Claimant had established that he suffered a work-related disability, Claimant had not filed his claim petition within three years of the date of his injury as is required by Section 315 of the Act. Relying on the testimony of Ms. McIlhenny, which he found to be credible, the WCJ found that the management disability benefits were not paid in lieu of workers' compensation because the booklet explaining the terms of the plan explicitly provided that the management disability benefits were in addition to workers' compensation benefits. Accordingly, the WCJ concluded that the receipt of the management disability benefits did not toll the running of the time limitation contained in Section 315. Claimant appealed to the Board which affirmed the WCJ's decision.[4] This appeal followed.

---

3. We note that the two amounts outlined by Ms. McIlhenny, $482.40 and $582.50, do not add up to $1,560, the amount she testified that Claimant received each month. The record contains no evidence explaining what other payments Claimant received; rather, it indicates only that Claimant received $1,560 per month which seems to be an uncontested fact.

4. The Board initially remanded the case to the WCJ for the transmittal of missing parts

On appeal,[5] the sole issue presented by Claimant is whether the management disability payments were payments in lieu of compensation, sufficient to toll the time limitation contained in Section 315.

■ The starting point of our analysis is Section 315 of the Act, which provides as follows:

In cases of personal injury all claims for compensation shall be forever barred, unless, within three years after the injury, the parties shall have agreed upon the compensation payable under this article; or unless within three years after the injury, one of the parties shall have filed a petition as provided in article four hereof. .... **Where, however, payments of compensation have been made in any case, said limitations shall not take effect until the expiration of three years from the time of the making of the most recent payment prior to date of filing such petition: Provided, That any payment made under an established plan or policy of insurance for the payment of benefits on account of non-occupational illness or injury and which payment is identified as not being workmen's compensation shall not be considered to be payment in lieu of workmen's compensation, and such payment shall not toll the running of the Statute of Limitations.**

77 P.S. § 602 (emphasis added). Section 315 of the Act has been held to be a statute of repose. *See Sharon Steel Corporation v. Workmen's Compensation Appeal Board (Myers)*, 670 A.2d 1194 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 544 Pa. 679, 678 A.2d 368 (1996). As such, the expiration period contained in

Section 315 of the Act not only limits a claimant's remedy, but also extinguishes a claimant's right to benefits altogether.[6] *Id.* Thus, a claimant whose claim petition was filed more than three years after the date of injury bears the burden of establishing that the claim fits within an exception contained in Section 315. *Id.*

In *Davis v. Workmen's Compensation Appeal Board (National Fuel Gas)*, 117 Pa.Cmwlth. 320, 544 A.2d 535 (1988), we affirmed an order of the Board which had affirmed a WCJ's determination that the claimant's claim petition had been untimely filed. The claimant had been injured and was receiving sick pay disability benefits pursuant to his employer's policy. In *Davis*, the key finding made by the WCJ was as follows:

5. Every year the Claimant received the Defendant's Employee Benefit Plan booklet which lists his benefits. This booklet provides specifically, " 'Sick Pay—If temporarily disabled, you receive benefits from the Company, based on service, which together with statutory benefits such as Workmen's Compensation, Social Security or state-required benefits, provides you with continuing income.' " Your Referee finds that this provision clearly indicates that the benefits received by Claimant were identified as not being Workmen's Compensation.

*Id.* at 536. Because the sick pay was explicitly designed to supplement benefits received under the Act, rather than to supplant them, we concluded that the sick pay benefits were not payments in lieu of compensation and, accordingly, concluded that the claimant's claim petition was un-

---

of the record which the WCJ subsequently provided.

**5.** Our standard of review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *Morey v. Workmen's Compensation Appeal Board (Beth-*

*energy Mines, Inc.)*, 684 A.2d 673 (Pa.Cmwlth. 1996).

**6.** Conversely, a statute of limitations merely extinguishes the availability of a claimant's remedy. *See Flannigan v. Workers' Compensation Appeal Board (Colt Industries)*, 726 A.2d 424 (Pa.Cmwlth.1999).

timely under Section 315.[7]

Later that same year, we decided *NUS Corporation v. Workmen's Compensation Appeal Board (Garrison)*, 119 Pa.Cmwlth. 385, 547 A.2d 806 (1988). In *NUS*, we affirmed a decision of the Board which affirmed a WCJ's decision to grant benefits. The claimant in *NUS*, Garrison, suffered a heart attack on January 12, 1979, while working for his employer and received long-term disability benefits under his employer's policy from January 13, 1979, to October 13, 1980, during which time he was totally disabled. Garrison subsequently filed a claim petition on March 28, 1983, more than four years after his injury. The WCJ concluded that the long-term disability payments were in lieu of compensation, and, therefore, tolled the running of the statute so that Garrison's claim petition was timely, and the Board agreed with this conclusion.

On appeal to this Court, we concluded that Garrison's petition was timely filed and wrote:

> Here, the record shows that pursuant to the group insurance policy which was funded by contributions from the employer and its employees, claimant received long term disability payments from Union Mutual Insurance Company from August 14, 1973 until October 13, 1980. Although these payments were not identified as to their purpose, they were paid to the claimant while he was totally disabled. When a person is totally disabled, it may be reasonably inferred from such long term disability payments that the claimant is suffering from a work-related injury for which he was compensated. *Workmen's Compensation Appeal Board v. Kennedy*, [21 Pa.Cmwlth. 76] 342 A.2d 828 (1975).

> "'It is only when the employee is not totally disabled and actually performs some labor for which he is paid wages or salary that such payments will not extend the time within which the claim petition must be filed....'" *Kennedy*, [342 A.2d at 829] *quoting Creighton v. Continental Roll & Steel Foundry Co.*, [155 Pa.Super. 165] 38 A.2d 337, 341 (1944). Compensation for total disability is based on a number of factors which show an effect on the claimant's economic horizon, that is, a loss of earning power and not a payment based on loss of wages alone.

*NUS Corp.*, 547 A.2d at 809.

Finally, in *Bergmeister v. Workmen's Compensation Appeal Board (PMA Insurance Co.)*, 134 Pa.Cmwlth. 104, 578 A.2d 572 (1990), we examined a similar issue. Bergmeister suffered from heart-related problems and stopped working on the advice of his doctor that further work could be injurious to his health. Pursuant to the terms of his employment, Bergmeister received his full salary for two months after leaving work. After the two months, he began receiving disability benefits which equaled 60% of his salary. The employer's plan provided that any amount received as disability would be credited against any workers' compensation benefits to which an employee became entitled. Claimant subsequently filed a claim petition which was granted because the WCJ concluded that the disability payments were paid in lieu of compensation, but the Board subsequently reversed that decision, concluding that the claimant's claim petition was time barred.

On appeal to this Court, we reversed the Board, concluding that the disability payments were designed to compensate the

---

**7.** In his brief, Claimant argues that *Davis* involved benefit payments for a non-occupational *illness* or *injury*. After reviewing *Davis*, we cannot agree with this statement. The benefits paid to the claimant in *Davis* were in addition to those received under workers' compensation. This fact alone, however, does not establish that the injury was not work-related. If Claimant were correct that *Davis* involved a non-work-related injury, *that* fact, by itself, would end our inquiry regardless of the status of the payments received by Davis or the date on which he filed his claim petition, because the injury itself, because it was *not* work-related, would not be compensable.

claimant for a work-related injury and were paid in lieu of compensation. In reaching this conclusion, we found significant the fact that the disability benefits would be credited against any workers' compensation benefits which the claimant received.

▪ In the present case, the Board, relying on *Davis*, focussed on a section of the literature describing Employer's management disability plan and concluded that the payments were in addition to workers' compensation benefits. The passage relied upon by the Board provided as follows:

> The Disability Income Benefit under this Plan is in addition to other benefits you may receive for total disability.

(Reproduced Record (R.R.) at 88a.) If we considered only this passage by itself, we would agree with the Board and Employer that the benefits were in addition to, rather than in lieu of, benefits under the Act. Reading further, however, we find that the plan provides as follows:

> When added to income you are eligible to receive from other Company and government sources, the Disability Income Benefit will provide you a level of income equal to 60 percent of your basic monthly salary at the time you become disabled, but no more than $10,000 a month. The amount of Disability Income Benefit provided by the Plan may fluctuate from month to month, depending on the income you receive from the following sources:
>
> . . . .
>
> 3. Disability benefits provided under Workers' Compensation or Occupational Disease laws of any state or of the Federal Government.

(R.R. at 89a.) In her deposition, Ms. McIlhenny stated that the amount of monthly benefits paid under the management disability plan would be offset by any workers' compensation benefits received by an employee, but in any case, an employee is guaranteed at least $50 per month by the terms of the plan. Based upon the above, although Claimant's claim petition was admittedly not filed within three years of the July 22, 1982 injury, he nonetheless established that he was receiving payments *in lieu of compensation*, thereby tolling the limitation contained in Section 315.

In response, Employer argues that the case is controlled by *Davis*, and, under that case, receipt of the management disability benefits did not toll the running of the statute. At first glance, *Davis* and the present case do appear very similar. The language of the plans involved both indicate that benefits received under the respective plans are in addition to benefits under the Act. The distinction between the cases, however, and the reason why Employer's reliance on *Davis* is misplaced, is in the practical application of each plan. In *Davis*, the benefits under the plan were clearly designed to **supplement** benefits under the Act to provide an employee with monthly income. By contrast, receipt of workers' compensation benefits in the present case **does not supplement** the overall amount which an employee will receive under the management disability plan; rather, it **reduces** it. We find the overall operation of Employer's plan to be very similar to the one examined in *Bergmeister* where we concluded that the disability benefits were paid in lieu of compensation and, therefore, tolled the running of the statute. Although the disability payments in the present case are reduced by any workers' compensation benefits received, whereas, in *Bergmeister*, the disability benefits were credited against the workers' compensation payments due, we find this a distinction without a difference.

Accordingly, we conclude that the practical effect of the management disability benefits paid in this case was to compensate Claimant for his injury in lieu of benefits under the Act. Therefore, the statute of limitations was tolled when Claimant began to receive these benefits, and, be-

cause, as of the time of the hearings before the WCJ, Claimant continued to receive these benefits, his claim petition was filed within the time constraints contained in Section 315 of the Act, and the Board erred by concluding to the contrary.

Reversed and remanded.

## *O R D E R*

**NOW**, September 2, 1999, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby reversed, and this case is remanded to the Board with instructions to further remand the case to a Workers' Compensation Judge for disposition of the Claimant's claim petition.

Jurisdiction relinquished.